WILLIAM S. DRINKALL *vs.* CHARLES R. SPIEGEL, SHERIFF.

Third Judicial District, Bridgeport, October Term, 1896. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The plaintiff was tried, convicted and imprisoned in the State of New York for burglary. During his term of imprisonment he was permitted to leave the reformatory by its managers, upon his agreement to comply with certain conditions sanctioned by the law of that State. These conditions he at once violated and fled to this State, where he was arrested in response to a requisition for his surrender to the New York authorities. Upon *habeas corpus* it was *held:*—

1. That inasmuch as his responsibility for the crime of burglary continued until his term of imprisonment was satisfied, he was still "charged with crime," within the meaning of that expression as used in § 2 of Art. IV. of the Federal Constitution relating to extradition.
2. That he was none the less a "fugitive from justice," because he had escaped from imprisonment after being allowed to go outside the prison walls on his parole.

[Argued October 27th—decided December 22d, 1896.]

APPLICATION for a writ of *habeas corpus*, brought to the Court of Common Pleas in New Haven County and tried to

the court, *Hotchkiss, J.* ; facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

In obedience to the command of the writ the defendant produced the plaintiff in said court, and made return that he held the plaintiff by virtue of a warrant of extradition issued by the Governor of this State, in compliance with the requisition made upon him by the Governor of the State of New York in which requisition and the papers attached thereto, it appeared that the said William S. Drinkall "stands charged with the crime of burglary in the third degree, committed in the county of Herkimer, and has taken refuge in the State of Connecticut;" that the requisition demanded that the said Drinkall be arrested and delivered to the authority of the State of New York to be conveyed back to said State; that the warrant commanded this defendant to arrest said William S. Drinkall and to deliver him to the agent of the said State of New York, and that he held the said Drinkall for the purpose of delivering him to the agent of the executive authority of the state of New York, pursuant to the direction of said warrant and the provisions of the statutes of the United States in such case provided.

To this return the plaintiff made the following replication : "The said W. S. Drinkall replies to said return and says that he, the said Drinkall, does not stand charged with the crime of burglary in the third degree, committed in the County of Herkimer, State of New York, in that he has been tried, convicted and sentenced to the Elmira Reformatory on the charge mentioned, and duly served said sentence until the board of managers of said reformatory released, paroled, and allowed him, said Drinkall, to leave said State of New York, as by law they were empowered to. And for further reply the petitioner alleges that he, said Drinkall, did not flee the justice of the State of New York, but left said State of New York as allowed and directed by said Board of Managers of the Elmira Reformatory."

There were various motions in respect to the pleadings, which are of no importance. The defendant denied this

replication and the matters therein alleged; and the issue thus joined was found in favor of the defendant.

By the papers attached to the requisition from New York, it appeared that the plaintiff had been indicted, tried, and convicted on the 27th day of May, 1895, of the crime of burglary in the third degree, in the county of Herkimer in that State, and had been sentenced therefor to the Elmira Reformatory, under the provisions of the law relating to that institution, and that said term of imprisonment had not yet expired; that by those provisions of law the manager of said reformatory permitted the said Drinkall to go outside the reformatory enclosure, upon certain conditions to which he agreed, but that he remained in the legal custody of said board of managers and subject to return at any time if he failed to comply with the conditions under which he was released; and that he violated the terms of his parole and came into the State of Connecticut. The court dismissed the writ and remanded the plaintiff to the custody of the defendant. The plaintiff appealed to this court.

*Edward J. Maher* and *Martin Conlon*, for the appellant (plaintiff).

The plaintiff was not " charged with crime," within the meaning of that expression as used in the Federal Constitution. It appears by the affidavit and the warrant of arrest issued by the managers of the Reformatory, that the reason of the arrest was the violation, by the plaintiff, of the conditions of his parole. The chief executive authority of a State cannot issue a warrant of extradition for the arrest of a fugitive from justice, on the ground of public policy. His only power to extradite a person from his State must be found in the Constitution and laws of the United States. Church on Hab. Corp., 2d Ed., 820; *Ex parte Morgan*, 20 Fed. Rep. 298; Rorer on Interstate Law, 2d Ed., 305. The finding or recital of the Governor granting the extradition, in his warrant, that the accused is a fugitive, is not conclusive upon the courts. Haw. on Interstate Extrad., 41; *Ex parte Reggel*, 114 U. S. 642; *Roberts* v. *Reilly*, 116 id. 80. It is shown

by the affidavit and parole, that for the crime of burglary mentioned in the warrant, the plaintiff had been convicted, sentenced and imprisoned. The conviction for an offense, like the recovery of judgment in a civil action, is a bar to any further prosecution based on the same cause of complaint. 1 Freeman on Judg. § 396. Crimes not actually but merely constructively committed within the jurisdiction of the demanding State, are not extraditable offenses. *Wilcox* v. *Nolze*, 34 Ohio St. 520; *In re Mohr*, 73 Ala. 503; *Jones* v. *Leonard*, 50 Iowa, 106; *Hartman* v. *Aveline*, 63 Ind. 345–351; *In re Cook*, 49 Fed. Rep. 883; affirmed by *Cook* v. *Hart*, 146 U. S. 183–193; *In re Jackson*, 2 Flipp. (U. S.) 183–186; *State* v. *Jackson*, 36 Fed. Rep. 258; *Ex parte Smith*, 3 McLean, 121–138; *Ex parte McKean*, 3 Hughes, 23; *Ex parte Reggel*, 114 U. S. 642–651.

*Lynde Harrison* and *Edmund Zacher*, for the appellee (defendant).

The petitioner, upon the papers presented, stands properly charged with the commission of a crime in the State of New York. Haw. on Interstate Extrad., 53; U. S. Statutes, § 5278; *Kingsbury's Case*, 106 Mass. 223; *Leary's Case*, 6 Abb. N. C. 55; *Re Manchester*, 5 Cal. 237; *Roberts* v. *Reilly*, 116 U. S. 95. If a person accused of crime is " charged with it," before trial, a *fortiori* is he " charged with crime " after conviction, and before his sentence has expired. 2 Moore on Extrad., § 530; *Dolan's Case*, 101 Mass. 219; *Hollon* v. *Hopkins*, 21 Kan. 638; *People ex rel. McCoy* v. *Warden of the State Prison*, 3 N. Y. Crim. Rep. 370. Is the plaintiff a fugitive from justice? This is a question of fact, and the Governor of the State of Connecticut and the trial court having found adversely to the plaintiff, this court will not review it. The fact that a man is charged with crime in one State and is afterwards found in another, has generally been regarded as *prima facie* evidence that he is a fugitive, and the recitals in the Governor's warrant are *prima facie* evidence of this fact. Ex parte *Reggel*, 114 U. S. 642, 653; *Roberts* v. *Reilly*, 116 id. 80; *Kingsbury's Case*, 106

Mass. 223; *Com.* v. *Hall,* 9 Gray, 262, 266; *Ex parte Sheldon,* 34 Ohio St. 319, 327; *In re Hughes,* 1 Phil. (N. Car. L.) 57. If the reformation of criminals can only take place in a walled enclosure in the State where the crime has been committed, and they cannot be trusted on their parole, as in this case, except upon the alternative of making the parole the equivalent of a pardon and release, then our own State as well as New York must be seriously hampered in some of the most approved methods of prison reform.

ANDREWS, C. J. There are various assignments of error, but only two questions are presented. Is the appellant a fugitive from justice, and is he " charged with a crime " in the State of New York, within the meaning of that expression as used in the Constitution of the United States?

The papers attached to the requisition from the executive of New York show that the plaintiff had been indicted, tried, convicted and sentenced in that State for the crime of burglary in the third degree, and that the term of the sentence has not yet expired. The plaintiff insisted and asked the court to decide that having been convicted of, and sentenced to the reformatory for, the crime of burglary, he could not be said now to be " charged with that crime; " that the charge of burglary had been merged in the verdict and sentence to and imprisonment in the Elmira Reformatory. The court did so hold; but held and decided that the charge of burglary in the third degree, upon which the plaintiff was convicted and sentenced to said reformatory, continued to be a charge against him until the said sentence was fully performed.

The Constitution of the United States, Art. IV. § 2, requires that " a person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime." The law of Congress passed in 1789,—now § 5278 of the Revised Statutes of the United States—provides for the carry-

ing out of this provision of the Constitution.   Our own statutes, §§ 1671–1682, establish the procedure which should be followed when a requisition is made upon the Governor of this State pursuant to the Constitution and the statutes of the United States, for the surrender of a person charged with a crime.   The earliest compact between the Plantations of Connecticut, New Haven, Plymouth and Massachusetts Bay, contained a stipulation that upon the escape of any prisoner or fugitive for any criminal cause, whether breaking prison or getting from the officer or otherwise escaping, he should, " upon the certificate of two magistrates," be delivered up " into the hand of the officer or other person who pursueth him."   1 New Haven Col. Records, 103 ; 1 Palfrey's Hist. of New England, 623—626.   The Articles of Confederation between the colonies prior to the Constitution, contained a provision that any person *guilty* of, or charged with " any crime, should be delivered up on the demand of the executive of the State from which he fled."   The provisions of law which existed prior to the adoption of the Constitution show that the purpose of the section quoted is that justice, offended in the State from which the person has fled, shall be satisfied.   It is one who " flees from justice " who is to be delivered up.   Neither the Constitution nor the statutes say that it is only for the purpose of trial that the fugitive is to be surrendered.   A man is still a fugitive from justice so long as he has departed leaving its demands unsatisfied.   Hawley on Interstate Extradition, 110.   JUDGE STORY in commenting on this section of the Constitution, says : " It is of vital impórtance to the public administration of criminal justice, and the security of the respective States, that criminals, who have committed crimes therein, should not find an asylum in other States, but should be surrendered up for trial and punishment.   It is a power most salutary in its general operation, by discouraging crimes and cutting off the chances of escape from punishment.   It will promote harmony and good feelings among the States ; and it will increase the general sense of the blessings of the national government.   It will, moreover, give strength to a great moral

duty, which neighboring States especially owe to each other, by elevating the policy of the mutual suppression of crime into a legal obligation. Hitherto it has proved as useful in practice as it is unexceptionable in its character." 2 Story on the Const., § 1809 ; 1 Kent's Comm. *37, note.

An offender against the justice of one State can acquire no rights by defrauding that justice. Between him and the justice he has offended no rights accrue to him by his flight. He remains at all times, and everywhere, liable to be called upon to answer to the law for his violation thereof, provided he comes within the reach of its arm. *United States* v. *Rauscher*, 119 U. S. 407, 425 ; *Adriance* v. *Lagrave*, 59 N. Y. 110. The expression "charged with," as applied to a crime, is sometimes used in a limited sense—intending the accusation of a crime which precedes a formal trial. In a fuller and more accurate sense the expression includes also the responsibility for the crime. Anderson's Law Dict., *in verb.* It is in this latter sense that the expression is used in the Constitution. The public purpose to be effected by extradition must be taken into consideration in determining this question. Its object is to prevent the successful escape of any person accused of crime, whether convicted or unconvicted, and to secure his return to the State from which he fled, for the purpose of punishment. It is invoked to aid in the administration of criminal justice and to more certainly insure the punishment of the guilty. The construction contended for by the plaintiff would defeat the ends of justice in many instances. There is no express decision cited which favors it. In *Dolan's Case*, 101 Mass. 219, the prisoner was returned from Ohio to Massachusetts by extradition to serve out an unexpired sentence, and in *Hollon* v. *Hopkins*, 21 Kan. 638, a prisoner was returned for a like purpose. No narrow or strained construction should be placed on that expression as there used. It is broad enough to include all classes of persons duly accused of crime. A person can be said to be charged with crime as well after conviction as before. The conviction simply establishes the charge conclusively. An unsatisfied judgment of conviction still constitutes a "charge," within

the true intent and meaning of the Constitution. An indict-ment or affidavit merely *presents* the charge, while a convic-tion *proves* it. To warrant extradition the statute requires an indictment or affidavit charging a crime, but if in addition thereto there is also presented a record of conviction, the case is not weakened, but rather strengthened. Public Papers of Gov. Hill, 1889, p. 286; 2 Moore on Extradition, p. 839; *The People* v. *Warden of The City Prison*, 3 N. Y. Crim. Rep. 370.

It being thus shown that the plaintiff was " charged with a crime " in the State of New York, and it appearing that he was found in this State, he is " a fugitive from justice," such that he ought to be extradited. The fact that a man is charged with crime in one State and is afterwards found in another, has generally been regarded as *prima facie* evidence that he is a fugitive. *Ex parte Reggel*, 114 U. S. 642–653; *Roberts* v. *Reilly*, 116 id. 80; *Kingsbury's Case*, 106 Mass. 223.

The plaintiff, however, strenuously insists that he is not a fugitive from justice. In his replication he alleged that he " did not flee from the justice of the State of New York, but left said State of New York as allowed and directed by the board of managers of the Elmira Reformatory." Technically the plaintiff is not in a position to raise this question. The truth of his allegation is denied, and the issue is found against him. This technicality has not been insisted on, and the plaintiff has really argued here the same question that was decided against him by the trial court. He rests his claim on the fact that he was permitted to go outside the Reforma-tory by the managers of that institution. This permission is spoken of as the parole, and is one of the papers accompany-ing the requisition from the Governor of New York. It di-rected and permitted the plaintiff to go to Grandville in the State of Michigan, where employment had been obtained for him with one J. H. Bullinet; and directed him while there to conform his conduct to certain rules and regulations which are set out in the parole. The statute of New York author-izing the managers to grant such parole, is this : " The said

board of managers shall also have power to establish rules and regulations under which prisoners within the reformatory may be allowed to go upon parole outside of the reformatory buildings and inclosure, but to remain while on parole in the legal custody and under the control of the board of managers, and subject at any time to be taken back within the inclosure of said reformatory ; and full power to enforce such rules and regulations, and to retake and to reimprison any convict so upon parole, is hereby conferred upon the said board, whose written order, certified by its secretary, shall be a sufficient warrant for all officers named in it to authorize such officer to return to actual custody any conditionally released or paroled prisoner ; and it is hereby made the duty of all officers to execute said order the same as ordinary criminal process." This statute is referred to in and is a part of the parole.

The plaintiff was permitted to go outside the reformatory, upon his acceptance of and promise to obey the directions contained in the parole ; while so far as appears he did not go to Michigan at all, but came to Connecticut and has never obeyed the directions and rules to which he had agreed. If he had gone to Michigan and it had been sought to secure his return from that State by a requisition upon the executive, a question might have been presented which we have no occasion to consider. He was in this State, not because of the parole but in violation of the parole. He has used the parole as a means by which to practice a fraud on the managers of the reformatory, thereby to escape from his imprisonment. If the plaintiff had escaped from the reformatory by force, he should unquestionably be returned ; but a prisoner who eludes the vigilance of his keepers by fraud, is in no better plight than one who does so by force. In the second of Coke's Institutes, at page 589, where the author discusses the Statute against prison breaking, it is said : "He that is in the stockes, or under lawful arrest, is said to be in prison, although he be not *infra parietes carceris* : and therefore this branch extendeth as well to a prison in law, as to a prison in deed." See also *Hobert* and *Stroud's Case*, Cro. Car. 209 ;

4 Bl. Comm., 129; 2 Sw. Dig. 325.   When the plaintiff was liberated from confinement within the reformatory and found himself at large in the State of New York, he was in effect within the prison liberties.   But it is the settled doctrine on this subject that the liberties of the prison is an extension or enlargement of the walls of the prison.   A person therefore is in prison, in legal contemplation, when within the liberties of the prison.   An escape from the liberties is an escape from the prison.   *Seymour* v. *Harvey*, 8 Conn. 63, 70.

There is no error.

In this opinion the other judges concurred.