THE PEOPLE OF THE STATE OF NEW YORK ex rel. EVERETT A. HUTCHINGS, Respondent, *v.* PETER A. MALLON, Warden of the City Prison, or WILLIAM HAUPTMAN, Defendants.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

First Department, December 3, 1926.

Extradition — interstate — respondent was convicted in California of felony but was paroled with direction to proceed to New York there to enter into employment previously procured — respondent did as directed — later, Governor of California lawfully revoked parole — upon revocation of parole, respondent became fugitive from justice (U. S. Const. art. 4, § 2, subd. 2; U. S. Rev. Stat. § 5278), subject to be returned to California.

The respondent, who seeks to be released by habeas corpus from arrest on a warrant issued, on an application from the Governor of California, was convicted in California of a felony and sentenced to imprisonment, but was thereafter paroled and directed to proceed to New York to enter into employment which he had previously procured. The respondent did as directed, came to this State and entered upon the employment which had been offered him, but later the Governor of California lawfully revoked the parole granted to the respondent, and the State of California seeks to have the respondent returned to that State, there to serve the remainder of his sentence. Upon the revocation of the parole by the Governor of California, the respondent became a fugitive from justice, within the meaning of subdivision 2 of section 2 of article 4 of the United States Constitution and section 5278 of the United States Revised Statutes, as re-enacted by United States Code, title 18, section 662, and the State of California is entitled to have him surrendered to a representative from that State to be returned thereto, to be dealt with according to law. Therefore, the Governor of the State of New York properly honored the demand made by the Governor of the State of California.

APPEAL by the People of the State of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 1st day of April, 1926, sustaining a writ of habeas corpus and discharging the respondent from custody.

*Michael J. Driscoll* of counsel [*Joab H. Banton, District Attorney*], for the appellant.

*Joseph Shalleck* of counsel, for the relator, respondent.

DOWLING, J. On March 10, 1920, the relator was indicted by the grand jury of Los Angeles county, State of California, for the crime of grand larceny by trick and device, alleged to have been committed in said State on the 22d day of December, 1919, whereby John B. Norris was deprived of the sum of $50,000. In October, 1920, the relator was extradited from the State of New York to the State of California, and on the 2d day of April, 1921, was convicted of the crime, which was a felony under the laws of Cali-

fornia, and sentenced by the Superior Court of Los Angeles county to the State Prison of the State of California at San Quentin for the term prescribed by law.    In the State of California grand larceny is punishable for not less than one year, or more than ten years.

On April 19, 1922, the relator was received at San Quentin State Prison and on May 1, 1923, the State Board of Prison Directors, in the manner prescribed by law in the State of California, fixed the sentence of the relator at seven and one-half years. In July, 1924, the relator made application to the California State Board of Prison Directors for parole and pursuant to the laws of the State of California, filed with the clerk of said Board an offer of employment by John H. Perry of the American Press Association of New York city.    On the 23d of August, 1924, the relator's application for parole was postponed by the said Board of Prison Directors for a period of six months.    Thereafter and on the 28th day of February, 1925, the State Board of Prison Directors, by action duly and regularly taken, ordered and directed that the said relator should be released from State Prison on parole for a period of one year, to go to the State of New York, and ordered that the relator's release should become effective August 7, 1925.    Pursuant to said order of the California State Board of Prison Directors, the relator on the 8th day of August, 1925, after serving almost three and one-half years of his sentence, was released from State Prison on parole.

The parole, or, as it is called, " ticket of leave," issued to relator by the State Board of Prison Directors contained nine rules applicable to his conduct while on parole, including the following:

" Rule 5.    While on Parole, and until the expiration of your sentence, you will continue to be in the legal custody and control of the State Board of Prison Directors; and should you fail, at any time, to live up to the requirements of the Board or the Parole Officer, you will be returned to prison."

At the bottom of the ticket of leave relator signed the following statement:                                     " SAN QUENTIN, CAL.

" I have read, or have had read to me, my Ticket of Leave, given me upon being released upon parole.    I fully understand all the rules and conditions therein set forth and shall abide by and follow them strictly.    I have had explained to me and fully understand the necessity of obeying strictly all of the rules and all of the conditions under which I have been released on parole and the penalties for violation.

" Witness:                              E. A. HUTCHINGS.

" R. SMITH."

Thereafter, pursuant to said order, the relator left the State of California and came to the State of New York, where he was employed by the American Press Association of New York city, whereof John H. Perry is the president, and pursuant to said order the relator has remained in the State of New York.

On November 27, 1925, Hon. Friend W. Richardson, Governor of the State of California, under the authority vested in him by the laws of that State, made an order canceling and revoking the parole theretofore issued to relator on the ground, among others:

" That the said E. A. Hutchings was not entitled to parole on August 7, 1925, or at any other time or at all, by reason of the nature of his crime, his prior acts of criminal nature, his career, habits, previous occupation, his lack of industry prior to his arrest, his want of good character, the nature of his associates, and his disposition; and further, by reason of the fact that he did not have legitimate employment of the kind and character represented to the Board at the time of his parole."

The findings of fact and conclusions of law signed by Governor Richardson show that the review of the action of the Parole Board was at the request of the district attorney of Los Angeles county, in answer to a published statement by the Governor that if the officials of said county requested it, he would review such action in regard to relator, referred to in said letter as " Big Hutch." Among the findings of fact made by the Governor were the following:

" (5) That the district attorney of Los Angeles county, and particularly Asa Keyes, at one time deputy district attorney, and now district attorney of said county, wilfully, with intent to deceive the said State Board of Prison Directors, concealed from the said board, information of other criminal acts on the part of E. A. Hutchings, and falsely and fraudulently represented and made it appear to the said board that the crime on account of which the said E. A. Hutchings was convicted and committed to the State penitentiary at San Quentin was the only act of a criminal nature theretofore committed by him, the said E. A. Hutchings; and further intentionally and wilfully made it appear to the State Board of Prison Directors, that the said E. A. Hutchings was entitled to parole at the time when said board granted such parole to E. A. Hutchings.

" (6) That the said E. A. Hutchings falsely, fraudulently, wilfully and intentionally misrepresented to the Board of Prison Directors facts relative to his past life, associates, criminal tendency and criminal acts; and further, relative to the nature of employment he, the said E. A. Hutchings has secured or intended to pursue in the event of his release on parole.

" (7) That prior to his arrest, conviction and commitment to

the State Prison, the said E. A. Hutchings had been guilty of numerous acts of a criminal nature within the State of California and elsewhere; that he had for a long time violated the laws of the State of California in operations in connection with the conducting of unlawful gambling games, bookmaking or the taking of bets on horse races, and in bunco operations, and that he conducted such operations unlawfully, under the protection of law enforcement officers of the city of Los Angeles, and the county of Los Angeles, State of California; that he had been guilty of bribery of such officers, and had knowingly, unlawfully and feloniously theretofore entered into an agreement and conspiracy with such officers, whereby the said Hutchings agreed to give to the said officers a certain percentage of his ill-gotten gains, through his unlawful operations as aforesaid, in return for protection on the part of said law enforcement officers, in this, that they agreed not to arrest the said E. A. Hutchings or his associates in crime, and to assist in the miscarriage of justice with respect to the apprehension and prosecution of the said E. A. Hutchings, and any persons connected with him in unlawful operations, as aforesaid; all of which facts were well-known to the said Asa Keyes as deputy district attorney and as district attorney of the county of Los Angeles, and he, the said Asa Keyes, failed, neglected and refused to supply such information to the State Board of Prison Directors, although he well knew that it was his legal duty so to do, to the end and for the purpose of securing the parole of E. A. Hutchings.

" (8) That the State Board of Prison Directors did not have sufficient information before them at the time of taking action upon the paroling of the said E. A. Hutchings, and failed and neglected to make a full and proper investigation of the facts, that should have been supplied to said Board by the said district attorney of Los Angeles county, and the judge of the Superior Court thereof, who presided at the trial; that the parole of said E. A. Hutchings was ordered by said board at a meeting when only three members were present, and without giving full and sufficient publication of the facts and circumstances of said parole."

As conclusions of law from the foregoing findings of fact, the Governor concluded and determined:

" (1) That the parole of E. A. Hutchings by the State Board of Prison Directors was obtained through misrepresentation and fraud.

" (2) That the parole of the said E. A. Hutchings was improperly and illegally issued.

" (3) That the said E. A. Hutchings had not been incarcerated in the State Prison a sufficient length of time to adequately and

properly punish him for the particular crime for which he was committed to the State Prison at San Quentin, at the time of his parole.

" (4) That the cancellation and revocation of the parole of E. A. Hutchings is justified from the foregoing facts.

" (5) That at the time E. A. Hutchings left the State of California and went to the State of New York, he was not legally a paroled prisoner, but an inmate of the State Penitentiary at San Quentin, who had unlawfully left the buildings and enclosures thereof."

The power of the Governor of California to revoke a parole issued by the Board of Prison Directors is not disputed and is conferred by an act of that State approved June 16, 1913 (Statutes 1913, p. 1048, chap. 591, § 1),* entitled "An act to establish a board of parole commissioners for the parole of, and government of paroled prisoners."

After such revocation of his parole the relator was arrested in the State of New York upon a warrant charging him with being a fugitive from justice. On the 27th day of November, 1925, the Hon. F. W. Richardson, Governor of the State of California, revoked the relator's parole and the relator was arrested in the State of New York upon a warrant charging him with being a fugitive from justice. Thereafter on the 4th day of January, 1926, a hearing was held before the Hon. Alfred E. Smith, Governor of the State of New York, upon the application of the Hon. F. W. Richardson to extradite the relator to the State of California, which application was granted on January 5, 1926.

Thereupon a writ of habeas corpus was issued upon the petition of relator, and after a hearing said writ was sustained and the relator discharged from custody (126 Misc. 591), from which order the present appeal is taken.

Reduced to its simplest elements, we have a case where a criminal has been released from State Prison on parole before the expiration of his sentence, with directions to go to another State and accept specified employment there, remaining subject to the rules and control of the Parole Board. He complies with the directions and enters upon the employment. While so doing, his parole is revoked by lawful authority, and he is declared by it to be a fugitive from justice. The question in its last analysis is, does the refusal of the criminal to return to the State where he committed his crime, to serve out the unexpired portion of his sentence, render him a fugitive from justice within the meaning of the extradition statutes?

The authority for a Governor of a State to issue a rendition warrant in extradition proceedings is found in article 4, section 2,

* See Henning's General Laws of California (3d ed.), 2242, chap. 266, § 1.— [REP.

subdivision 2, of the Constitution of the United States, and the act of Congress, approved February 12, 1793 (1 U. S. Stat. at Large, 302, chap. 7, § 1), being now known as section 5278 of the Revised Statutes of the United States (as re-enacted by United States Code, tit. 18, § 662).

The United States Constitution (Art. 4, § 2, subd. 2) provides: " A person charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State, shall on demand of the executive authority of the State from which he fled, be delivered up to be removed to the State having jurisdiction of the crime."

Section 5278 of the United States Revised Statutes provides: " Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or Chief Magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." (See, also, United States Code, tit. 18, § 662.)

In order to constitute a person a fugitive from justice within the meaning of the Constitution and the act of Congress, all that is required is that he was physically present in the demanding State at the time when he was charged with committing a crime and that he subsequently departed therefrom and is found in another State.

In *Appleyard* v. *Massachusetts* (203 U. S. 222, 227) Mr. Justice Harlan said: " A person charged by indictment or by affidavit before a magistrate with the commission within a State of a crime covered by its laws, and who, after the date of the commission of such crime leaves the State — no matter for what purpose or with what motive, nor under what belief — becomes, from the time of such leaving, and within the meaning of the Constitution and the laws of the United States, a fugitive from justice, and if found in another State must be delivered up by the Governor of such State to the State whose laws are alleged to have been violated, on the production of such indictment or affidavit, certified as authentic by the Governor

of the State from which the accused departed. Such is the command of the supreme law of the land, which may not be disregarded by any State." (Quoted with approval in *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 133.)

In *Bassing* v. *Cady* (208 U. S. 386) it appeared that the Governor of New York made a requisition upon the Governor of the State of Rhode Island for the surrender of the fugitive Bassing to answer for the crime of grand larceny alleged to have been committed in the State of New York. Upon his surrender to the authorities of New York State he was discharged from custody and the indictment against him was dismissed on the ground that there was not sufficient evidence to hold the accused. The relator again went to the State of Rhode Island. Thereafter a new and second indictment was found against the same relator for the same offense and on the same state of facts, and a second requisition was made upon the Governor of the State of Rhode Island for his surrender. The Governor of Rhode Island complied with this second request and issued his executive warrant. Mr. Justice HARLAN said (at p. 392): " If he was in New York at that time (and it must be assumed upon the record that he was) and thereafter left New York, no matter for what reason or under what belief, he was a fugitive from the justice of that State within the meaning of the Constitution and laws of the United States. These views are in accord with the adjudged cases. *Appleyard* v. *Massachusetts,* 203 U. S. 222, and authorities cited; *Illinois ex rel. Mc Nichols* v. *Pease,* 207 U. S. 100, and authorities cited. He was none the less such a fugitive, within the meaning of the Constitution and laws of the United States, because after the dismissal of the first indictment he left New York and returned to Rhode Island with the knowledge of or without objection by the New York authorities."

In *People ex rel. Gottschalk* v. *Brown* (237 N. Y. 483) the Court of Appeals defined a fugitive from justice as follows: " To be regarded as a fugitive from justice it is not necessary that one shall have left the State in which the crime is alleged to have been committed for the very purpose of avoiding prosecution, but simply that, having committed there an act which by the law of the State constitutes a crime, he afterwards has departed from its jurisdiction and when sought to be prosecuted is found within the territory of another State."

The next question, therefore, is, does the fact that he is not merely charged with crime but actually has been convicted thereof, change his status?

In the case of *Matter of Hope* (7 N. Y. Cr. 406) Governor David B. Hill of New York passed upon this precise question. There

it appeared that the relator escaped from prison and upon being recaptured in New York State, a requisition was made for his surrender. It was contended that the Constitution and laws of the United States only provided for the return of fugitives for the purpose of standing trial and those laws did not apply to escaped prisoners. He said:

" No narrow or strained construction should be placed upon the word ' *charged* ' as used in the Constitution and in the Federal statute. It is broad enough to include all classes of persons duly accused of crime. A person can be said to be ' *charged* ' with crime as well after his conviction as before. The conviction simply establishes the charge conclusively. An unsatisfied judgment of conviction still constitutes a ' *charge* ' within the true intent and meaning of the Constitution. An indictment or affidavit merely *presents* the charge, while a conviction *proves* it. To warrant extradition the statute requires an indictment or affidavit charging a crime, but if, in addition thereto, there is also presented a record of conviction, the case is not weakened but rather strengthened.

" The public purpose to be effected by extradition must be taken into consideration in determining this question. Its object is to prevent the successful escape of *all* persons accused of crime, whether convicted or unconvicted, and to secure their return to the State from whence they fled, for the purpose of punishment. It is invoked to aid the administration of criminal justice and to more certainly insure the punishment of the guilty. The construction contended for by the prisoner's counsel would defeat the ends of justice in many instances, and it is conceded that there is no express decision favoring it."

In Moore on Extradition (Vol. 2, p. 839) it is said: " The term ' charged ' applies to persons convicted as well as to persons merely sought for the purpose of trial. Where a person is convicted of crime, his sentence of imprisonment can be satisfied only by actual service of his term in prison. Hence, if he escapes, the term ceases to run, and he may, after its nominal expiration, be brought back to serve the unexpired balance of his term."

The final question is, can the relator be deemed a fugitive from justice, when he originally left the State of California with the consent of the proper authorities, under parole, and his return thereto is demanded, when his parole has been lawfully revoked? It must be remembered that a criminal under parole is not a free agent, nor is his liberty unrestricted. A portion of the punishment still remaining unfulfilled is held in suspense pending his good behavior. Thus under the very " ticket of leave " which constituted relator's permission to leave prison walls and the State of

California, and to which he assented in writing, he was warned as follows:

" Rule 3. Your civil rights are suspended by law until the expiration of your sentence. You cannot, therefore, lawfully enter into any contract, engage in business for yourself, or marry."

The hand of the law is still over him, ready to be laid upon him in case he violates the terms of his parole. What better position can he be in if that parole is revoked? And it must be remembered as well that the Governor of California found as a fact (see his finding of fact 6) that relator had " falsely, fraudulently wilfully and intentionally misrepresented to the Board of Prison Directors facts relative to his past life, associates, criminal tendency and criminal acts; " so that relator was himself a party to the improper obtaining of his parole.

In *Drinkall* v. *Spiegel* (68 Conn. 441) it was held that although a prisoner was allowed to go outside of the New York Reformatory on parole, which among other things directed that he go to Michigan to obtain employment, and instead thereof he went to the State of Connecticut, he was a fugitive from justice from the State of New York. The Supreme Court of Connecticut said (at p. 445):

" The papers attached to the requisition from the executive of New York show that the plaintiff had been indicted, tried, convicted and sentenced in that State for the crime of burglary in the third degree, and that the term of the sentence has not yet expired. The plaintiff insisted and asked the court to decide that having been convicted of, and sentenced to the reformatory for, the crime of burglary, he could not be said now to be ' charged with that crime; ' that the charge of burglary had been merged in the verdict and sentence to and imprisonment in the Elmira Reformatory. The court did so hold; but held and decided that the charge of burglary in the third degree, upon which the plaintiff was convicted and sentenced to said reformatory, continued to be a charge against him until the said sentence was fully performed.   *   *   * A man is still a fugitive from justice so long as he has departed, leaving its demands unsatisfied. Hawley on Interstate Extradition, 110. Judge STORY in commenting on this section of the Constitution, says: ' It is of vital importance to the public administration of criminal justice, and the security of the respective States, that criminals, who have committed crimes therein, should not find an asylum in other States, but should be surrendered up for trial and punishment. It is a power most salutary in its general operation, by discouraging crimes and cutting off the chances of escape from punishment. It will promote harmony and good feelings

among the States; and it will increase the general sense of the blessings of the national government. It will, moreover, give strength to a great moral duty, which neighboring States especially owe to each other, by elevating the policy of mutual suppression of crime into a legal obligation. * * * '

" * * * The public purpose to be effected by extradition must be taken into consideration in determining this question. Its object is to prevent the successful escape of any person accused of crime, whether convicted or unconvicted, and to secure his return to the State from which he fled, for the purpose of punishment. It is invoked to aid in the administration of criminal justice and to more certainly insure the punishment of the guilty. The construction contended for by the plaintiff would defeat the ends of justice in many instances. * * * No narrow or strained construction should be placed on that expression as there used. It is broad enough to include all classes of persons duly accused of crime. A person can be said to be charged with crime as well after conviction as before. The conviction simply establishes the charge conclusively. An unsatisfied judgment of conviction still constitutes a ' charge,' within the true intent and meaning of the Constitution."

In summing up the opinion of the court, Chief Judge Andrews said (at p. 448): " It being thus shown that the plaintiff was ' charged with a crime ' in the State of New York, and it appearing that he was found in this State, he is ' a fugitive from justice,' such that he ought to be extradited."

There is an interesting case in Oklahoma which is directly in point. It is *Ex parte Williams* (10 Okla. Crim. 344). There it appeared that the fugitive was charged by indictment, tried and convicted for the crime of grand larceny in the State of Indiana. He received a sentence of from one year to fourteen years, but before the expiration of the term was paroled by the Board of Commissioners of the Indiana State Prison, and removed from the State of Indiana to the State of Oklahoma. Thereafter he was declared a delinquent and his parole was revoked. The Governor of Indiana thereupon presented requisition papers to the Governor of Oklahoma for his surrender to the former State as a fugitive from justice. The court said: " There is but one question in this case, and that is the legality of the revocation of the parole of petitioner; but this is a question for the courts of Indiana, for they alone have the right to construe their Constitution and laws. When the Governor's action in any matter is authorized by law, it is our duty to sustain such action, and we take great pleasure in doing so. We find that the Governor's action in this case is entirely proper, and within the law, and it is therefore upheld and sustained."

The case of *Drinkall* v. *Spiegel* (*supra*) was therein cited with approval.

In *Ex parte Carroll* (217 S. W. 382; 86 Tex. Cr. R. 301) the Court of Criminal Appeals of Texas held: "One who was convicted under an indictment and was sent to prison and was paroled and broke the conditions upon which his freedom from confinement depended was in no better position than if he had escaped by force, and was subject to extradition."

In *People ex rel. Newton* v. *Twombly* (228 N. Y. 33) Judge CARDOZO said (at p. 36): "A prisoner who has broken his parole is in the same plight for most purposes as one who has escaped (*Drinkall* v. *Spiegel*, 68 Conn. 441). 'He that is in the stockes, or under lawfull arrest, is said to be in prison, although he be not *infra parietes carceris;* and therefore this branch [the statute against prison breaking] extendeth as well to a prison in law, as to a prison in deed' (Coke's Institutes, p. 589, quoted in *Drinkall* v. *Spiegel, supra,* p. 449)."

The only case cited which holds differently from those cited hereinbefore is *Matter of Whittington* (34 Cal. App. 344) which held the question of whether the accused had left the demanding State of his own volition, or under compulsion of legal process, could be inquired into. This holding is opposed to the uniform current of the decisions of the United States Supreme Court, which hold that there can be no inquiry into the motives which cause an alleged fugitive to depart from one State and take refuge in another; there is no discretion allowed, no inquiry into motives. (*Drew* v. *Thaw*, 235 U. S. 432.)

I reach the conclusion, therefore, that when the Governor of California, under the exercise of his conceded power, revoked the parole under which relator had left the State, and on November 30, 1925, demanded of the Governor of New York that relator, as a fugitive from justice, be surrendered up to the representative of the former State to be returned thereto and there to be dealt with according to law, he was within his rights and warranted by law in such demand, and that the same was properly honored by the Governor of the State of New York.

The order appealed from should, therefore, be reversed, the writ of habeas corpus dismissed and the relator surrendered to the police commissioner of the city of New York to be delivered to the agent of the State of California in pursuance of the rendition warrant of the Governor of New York which had been returned as the cause of detention.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order reversed, writ dismissed and relator surrendered for extradition pursuant to the rendition warrant. Settle order on notice.