Ex parte MORGAN.

No. 8350.

District Court, S. D. California,
Central Division.

July 6, 1948.

es Cal., and Frank Richards, Deputy Atty., Gen., of California, for respondents.

YANKWICH, District Judge.

## I.

### Interstate Extradition.

The Constitution of the United States provides that a person charged in any State with treason, felony or other crime, who flees from justice, and is found in another State, shall be delivered to the State having jurisdiction of the crime on demand of the Executive authority of such State.[1]

 The object of this provision, which in the identical language appeared first in the Articles of Confederation of 1781, has been stated by the Supreme Court in this manner:

"The language was not used to express the law of extradition as usually prevailing among independent nations but to provide a summary executive proceeding by the use of which the closely associated states of the Union could promptly aid one another in bringing to trial persons accused of crime by preventing their finding in one state an asylum against the processes of justice of another. Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L. Ed. 549. Such a provision was necessary to prevent the very general requirement of the state Constitutions that persons accused of crime shall be tried in the county or district in which the crime shall have been committed from becoming a shield for the guilty rather than a defense for the innocent, which it was intended to be. Its design was, and is, in effect, to eliminate for this purpose, the boundaries of states, so that each may reach out and bring to speedy trial offenders against its laws from any part of the land.

"Such being the origin and purpose of these provisions of the Constitution and statutes, they have not been construed narrowly and technically by the courts as if they were penal laws, but liberally to effect their important purpose, with the result that one who leaves the demanding state before prosecution is anticipated or begun, or without knowledge on his part

Richard A. Haley, of Los Angeles, Cal., for petitioner.

Ray L. Chesebro, City Atty., Donald M. Redwine, Asst. City Atty., and John L. Bland, Deputy City Atty., all of Los Angel-

---

[1] United States Constitution, Article 4, Section 2, Clause 2.

that he has violated any law, or who, having committed a crime in one state, returns to his home in another, is nevertheless decided to be a fugitive from justice within their meaning."[2]

Three conditions must concur before a person can be extradited. They are stated by the Supreme Court in a leading case:

"No person may be lawfully removed from one state to another by virtue of this provision, unless: 1, He is charged in one state with treason, felony, or other crime; 2, he has fled from justice; 3, a demand is made for his delivery to the state wherein he is charged with crime. If either of these conditions is absent, the Constitution affords no warrant for a restraint of the liberty of any person."[3]

The designation of the crimes within the constitutional provision has been held comprehensive enough to embrace "any offense, whatever its nature, which the State, consistently with the Constitution and laws of the United States, *may have made a crime against its laws.*"[4]

The Courts have been equally liberal in determining who is a fugitive. Perhaps the broadest statement is this:

"To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, *but simply that, having within a state committed that which by its laws constitutes a crime,* when he is sought to be subjected to its criminal process to answer for his offense, he has left its jurisdiction, and is found within the territory of another."[5]

## II.

### Implementing Legislation.

To give effect to this constitutional clause, the Congress enacted, on February 12, 1793, a statute which is the source of the present provision in the Criminal Code, the main portion of which, so far as material to this inquiry, reads:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear."[6]

All States, including California, have statutes relating to the procedure to be followed when demand for extradition is addressed to their authorities. The California law now in effect derives from a uniform criminal extradition statute which has been adopted by a large number of states.[7] The procedure, in substance, pro-

[2] Biddinger v. Commissioner of Police, 1917, 245 U.S. 128, 132, 38 S.Ct. 41, 42, 62 L.Ed. 193; Jackson v. Meyerling, 7 Cir., 1931, 54 F.2d 621.

[3] Pierce v. Creecy, 1908, 210 U.S. 387, 401, 28 S.Ct. 714, 718, 52 L.Ed. 1113. The only question for determination in such case is whether the petitioner is held in violation of federal law, *not whether he is guilty.* South Carolina v. Bailey, 1933, 289 U.S. 412, 420, 421, 53 S.Ct. 667, 77 L.Ed. 1292; United States v. Superintendent of County Prisons, 3 Cir., 1940, 111 F.2d 409, 411, 412.

[4] Commonwealth of Kentucky v. Dennison, 1860, 24 How. 66, 101–103, 16 L. Ed. 717; And see, Appleyard v. Massachusetts, 1906, 203 U.S. 222, 227, 27 S. Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Ex parte Reggel, 1885, 114 U.S. 642, 649, 650, 5 S.Ct. 1148, 29 L.Ed. 250.

[5] Roberts v. Reilly, 1885, 116 U.S. 80, 87, 6 S.Ct. 291, 300, 29 L.Ed. 544. (Emphasis added.)

[6] 18 U.S.C.A. § 662.

[7] Penal Code of California, Secs. 1548–1558.

vides for honoring by the Governor of the State of a demand for extradition, for the issuance of a warrant of arrest, and the taking of the arrested person before a magistrate. On the whole, ample opportunity is given for questioning the validity of the extradition to satisfy the most punctilious observance of the requirements of due process. Here we are concerned only with certain specific clauses of the statute. The first of these reads:

"The Governor of this State may also surrender, on demand of the executive authority of any other State, any person in this State charged in such other State in the manner provided in section 1548.2 of this code with committing an act in this State, or in a third State, intentionally resulting in a crime in the State whose executive authority is making the demand. The provisions of this chapter, not otherwise inconsistent, shall apply to such cases, even though the accused was not in the demanding State at the time of the commission of the crime, and has not fled therefrom."[8]

Its application to the present case is brought into play by undisputed facts.

On June 4, 1948, the Governor of California honored a demand for extradition by the Governor of Colorado, dated May 27, 1948. The petitioner was arrested pursuant to a warrant of arrest issued thereafter, and placed in the custody of the Chief of Police of Los Angeles. On June 7, 1948, he applied for a writ of habeas corpus in the District Court of Appeal of California for the Second District, Division Two. That court heard the matter on June 9, 1948, and on June 15, 1948, discharged the writ. A petition for a similar writ filed in the Supreme Court of California on June 16, 1948, was denied on June 1, 1948. The present petition was filed on June 23, 1948, and a writ issued by me on the same day, returnable on June 25, 1948.

The petitioner has been for many years a resident of Burbank, Los Angeles County, California. The offense with which he is charged in Colorado is conspiracy to commit grand larceny, a crime denounced by Colorado statutes.[9] *He was not in the State of Colorado at the time of the alleged commission of the offense.* And the inquiry centers around the proposition whether he was a fugitive within the meaning of the pertinent constitutional clause and the federal statute implementing it. This, in turn, brings up the question whether the provision of the California statute which allows extradition in cases where "the accused was not in the demanding State at the time of the commission of the crime and has not fled therefrom"[10] is constitutional.

## III.

### Constitutionality of California Statute.

The petitioner contends that it is not. He urges that it conflicts both with the constitutional provision and the federal statute. It may be conceded that the federal statute[11] does not, *in so many words,* apply to offenses committed in the State *by a person not present in it at the time of their commission.* Nevertheless, it is accepted doctrine that a State may punish acts committed beyond its boundaries which result in a crime within the State. As said by Mr. Justice Holmes:

"Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power."[12]

And the decisions of the Supreme Court, interpreting the federal statutes under consideration have held that the commission of an offense in a State while the defendant is not physically present in it, come

[8] Penal Code of California, Sec. 1549.1.

[9] 1935 Colorado Statutes, Chapter 48, Sec. 177.

[10] Penal Code of California, Secs. 1549, 1549.1.

[11] 18 U.S.C.A. § 662.

[12] Strassheim v. Daily, 1911, 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735. And see 14 Am.Jur., Criminal Law, Sec. 227; Hyde v. United States, 1912, 225 U.S. 347, 362–366, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; King v. United States, 8 Cir., 1944, 144 F.2d 729, 731.

within the purview of the constitutional provision.[13] These cases stress the fact that the important factor in determining the matter is not so much actual presence of a person in a State as *"having within a state committed that which by its laws constitutes a crime."*[14] This being so, state legislation in aid of the federal statute which governs such situations cannot be said to conflict with the letter or spirit of the constitutional provision.[15] And high state courts which have had occasion to pass on such statutes have so ruled.[16] The California District Court of Appeal followed these pronouncements in the opinion filed in this case.[17]

As these cases relate to federal constitutional interpretation, they are not binding on us. However, a study of them, in the light of the principles to which we have already alluded in the first portions of this opinion, leads us to the conclusion that they interpret the constitutional grant of power correctly, and that such interpretation should command our accord. State legislation which merely supplements a field covered by federal statute does not involve any constitutional infirmity, when, as is the case here, it merely covers a situation which, *while not specifically covered by federal legislation,* is within the spirit of the constitutional provision pursuant to which it was enacted, as interpreted by our highest courts.[18]

A group of cases which I mentioned at the hearing, lend support to this conclusion. I refer to the cases which hold that a state parolee who has departed from the State which paroled him *with the consent of the authorities,* and, afterwards, *while in another state,* violates his parole, may be extradited, whether the state statute makes

---

[13] See cases cited in Footnotes 2, 3, 4, and 5.

[14] Roberts v. Reilly, supra, 116 U.S. at page 97, 6 S.Ct. at page 300. (Emphasis added).

[15] Hines v. Davidowitz, 1941, 312 U.S. 52, 66, 67, 61 S.Ct. 399, 85 L.Ed. 581, and cases cited in Footnotes 20, 22, 23 to case; 22 Am.Jur., Extradition, Sec. 9, pp. 249, 250; Innes v. Tobin, 1916, 240 U.S. 127, 134, 135, 36 S.Ct. 290, 60 L.Ed. 562; In re Tenner, 1942, 20 Cal. 2d 670, 676, 128 P.2d 338; In re Harris, 1946, 309 Mass. 180, 34 N.E.2d 504, 135 A.L.R. 969.

[16] Cassis v. Fair, 1944, 126 W.Va. 557, 29 S.E.2d 245, 248, 151 A.L.R. 233; Culbertson v. Sweeney, 1942, 70 Ohio App. 344, 44 N.E. 807, 810. (The Supreme Court of Ohio dismissed an appeal from this decision "for the reason that no debatable constitutional question is involved.") Culbertson v. Sweeney, 1942, 140 Ohio St. 426, 45 N.E.2d 118.) See, Ennist v. Baden, 1946, 158 Fla. 141, 28 So.2d 160; English v. Matowitz, 1947, 148 Ohio St. 39, 72 N.E.2d 898; Ex parte Campbell, 1946, 147 Neb. 820, 25 N.W.2d 419, 423.

[17] In re Thomas B. Morgan, Cal.App., 194 P.2d 800.

[18] 22 Am.Jur., Extradition, Sec. 9, pp. 249, 250; 35 C.J.S., Extradition, § 3, p. 320. In Innes v. Tobin, 1916, 240 U.S. 127, 134, 135, 36 S.Ct. 290, 292, 60 L. Ed. 562, Mr. Chief Justice White gives an unanswerable reason for this view:

"* * * while it is undoubtedly true that in the decided cases relied upon (Kentucky v. Dennison, supra; Roberts v. Reilly [supra]; Hyatt v. People of State of New York ex rel. Corkran [supra], 188 U.S. 691, 23 S.Ct. 456, 47 L. Ed. 657) the exclusive character of the legislation embodied in the statute was recognized, those cases, when rightly considered, go no further than to establish the exclusion by the statute of all state action from the matters for which the statute expressly or by necessary implication provided.

"No reason is suggested nor have we been able to discover any, to sustain the assumption that the framers of the statute, in not making its provisions exactly coterminous with the power granted by the Constitution, did so for the purpose of leaving the subject, so far as unprovided for, beyond the operation of any legal authority whatever, state or national. On the contrary, when the situation with which the statute dealt is contemplated, the reasonable assumption is that by the omission to extend the statute to the full limits of constitutional power it must have been intended to leave the subjects unprovided for not beyond the pale of all law, but subject to the power which then controlled them,—state authority until it was deemed essential by further legislation to govern them exclusively by national authority. In fact, such conclusion is essential to give effect to the act of Congress, since to hold to the contrary would render inefficacious the regulations provided concerning the subjects with which it dealt."

specific provision for such contingency or not.[19] We quote from one of them:

"The law is also settled that a paroled prisoner who has, in violation of parole, left the State in which he was convicted of crime is, within the Constitutional provision in question, a person charged with crime in the State where he was convicted and one who has fled from the justice of that State, so that he is subject to extradition. Drinkall v. Spiegel, 1896, 68 Conn. 441, 36 A. 830, 36 L.R.A. 486; Hughes v. Pflanz, 6 Cir., 1905, 138 F. 980. *It is also settled that a paroled prisoner who has left the State of conviction pursuant to the terms of his parole, but later violated the same, is a person charged with crime and a fugitive from justice subject to extradition.* People ex rel. Hutchings v. Mallon, 218 App.Div. 461, 218 N.Y.S. 432, affirmed without opinion 1927, 245 N.Y. 521, 157 N.E. 842; Ex parte Nabors, 1928, 33 N.M. 324, 267 P. 58."[20]

The following language is also singularly appropriate:

"The Constitutional provision and the procedural statute were intended to provide a summary executive proceedings, by the use of which the closely associated states of the union could promptly aid one another in bringing to trial persons accused of crime in one state, but found in another beyond the reach of the state where the crime was committed. To this end, the courts have given the Constitution and statute a liberal construction in order to effectuate and expedite the administration of justice in the several states. Biddinger v. Commissioner of Police, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed. 193; Appleyard v. Massachusetts, 203 U.S. 222, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073; Lascelles v. Georgia, 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549; Roberts v. Reilly, 116 U.S. 80, 94, 6 S.Ct. 291, 29 L.Ed. 544; Ex parte

Reggel, 114 U.S. 642, 650, 5 S.Ct. 1148, 29 L.Ed. 250; Commonwealth of Kentucky v. Dennison, 24 How. 66, 104, 16 L.Ed. 717; Ex parte Anthony, 198 Wash. 106, 87 P.2d 302.

"The only prerequisites to extradition from one state to another are, that the person sought to be *extradited is substantially charged with a crime against the laws of the demanding state, and that he is a fugitive from justice.*"[21]

It is obvious that if a person who commits in a State an act which amounts to violation of his parole in another State may be considered a fugitive from justice, a State may, *without doing violence to any constitutional prohibition,* provide that one who, within its boundaries, commits an act which is denounced as a crime by another State may be extradited to that State.

■ The conclusion is, therefore, inescapable that the California statute under consideration has no constitutional infirmity.

## IV.

### Sufficiency of Record. Availability of Remedy Sought.

■ What has just been said disposes of the chief contention in the case. We consider others briefly.

The Complaint issued by a Justice of Peace at Denver, Colorado, the warrant of arrest and the affidavits in the case filed with the Governor of California, are a sufficient compliance with the federal statute.[22] Courts have been very liberal in interpreting the requirements of this section. They have held, in effect, that any method prescribed by the demanding State for the institution of a criminal proceeding and which may be the basis for the issuance of a warrant of arrest satisfies the quantum of proof of the statute.[23] Nor is there merit to the contention of the respondent

---

[19] Reed v. Colpoys, 1938, 69 App.D.C. 163, 99 F.2d 396, 397; Brewer v. Goff, 10 Cir., 1943, 138 F.2d 710; see 35 C. J.S., Extradition, § 10(2), pages 327, 328.

[20] Reed v. Colpoys, 1938, 69 App.D.C. 163, 99 F.2d 396, 397. (Emphasis added).

[21] Brewer v. Goff, supra, 138 F.2d at pages 711, 712.

[22] 18 U.S.C.A. § 662. See, Munsey v. Clough, 1905, 196 U.S. 364, 372, 373, 25 S.Ct. 282, 49 L.Ed. 515; Daugherty v. Hornsby, 5 Cir., 1945, 151 F.2d 799.

[23] 35 C.J.S., Extradition, § 14, pages 333–338; Raftery v Bligh, 1 Cir., 1932, 55 F.2d 189, 194–198; Riley v. Colpoys, 1936, 66 App.D.C. 116, 85 F.2d 282; United State v. O'Brien, 7 Cir., 1943, 138 F.2d 217, 218.

that other remedies have not been exhausted. Admittedly, the rule is that the petitioner must use up all his available methods of relief before resorting to a writ of habeas corpus in the federal district court. However, the principle does not apply to situations in which such resort would be unavailing, or would not achieve the result sought.[24] This was the situation here. The only possible recourse other than habeas corpus left to the petitioner was a petition for certiorari in the Supreme Court of the United States after the Supreme Court of California had refused a writ. When the District Court of Appeal discharged the writ, the petitioner was taken into custody, in which he remained until admitted on bond when the writ was returned before me. When the present petition was filed, officers from Colorado were here to take him in charge and transport him to Colorado. Only two days elapsed between the denial of the writ by the Supreme Court of California and the filing of this petition. It would have been a physical impossibility to prepare and file with the Clerk of the Supreme Court of the United States at Washington, a petition for writ of certiorari. And it was stated at the hearing, *and is undisputed,* that counsel for the petitioner had been informed by the Clerk of the Supreme Court of California that *it was not customary* for that court to grant stays pending the filing and determination of such petition. Any wait, therefore, would have rendered the question moot, because the petitioner would have been transported to the State of Colorado before any action could have possibly been taken on it. Application for relief from the Supreme Court of the United States would have been an idle gesture.

It follows that the petitioner resorted to the only means left to him for questioning the right of the State of California to surrender him, namely, a petition for writ of habeas corpus in this court.[25] Jurisdiction

to entertain it is, therefore, present. However, for the reasons indicated, the writ should be, and is hereby discharged, and the petitioner is remanded to the custody of the Chief of Police of Los Angeles.

[24] Ex parte Hawk, 321 U.S. 114, 117, 118, 64 S.Ct. 448, 88 L.Ed. 572; White v. Ragen, 1945, 324 U.S. 760, 764–767, 65 S.Ct. 978, 89 L.Ed. 1348; House v. Mayo, 1945, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739.

[25] In Gordon v. Scudder, 9 Cir., 1947, 163 F.2d 518, upon which the respond-

ent relies in challenging our jurisdiction, the petitioner was confined in a state institution. Delay would not have affected the assertion of his illegal detention. Hence an application for a writ of certiorari was a *condition precedent* to his petitioning to the federal district court for relief of the type sought here.