Case 77.—PROSECUTION AGAINST J. H. SACRA FOR RAPE. —Oct. 16.

## Sacra v. Commonwealth.

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Defendant convicted and appeals.   Reversed.

1.   Rape—Trial—Motion by Defendant to Discharge Jury—Effect of Motion—Where a jury is discharged after the trial is begun, upon motion of the defendant, he may be again placed on trial before another jury.   The rule that the jury may not be discharged only applies where the defendant objects to the discharge of the jury.

2.   Disability of Defendant—Injury by Armed Mob—Forced Trial—A man on trial for his life should not be compelled·to try when there is doubt about his ability to properly conduct·his defense, especially when this disability is produced by armed violence pending the trial.   No court can safely undertake to administer justice where the law is not respected and a mob is undertaking to take the administration of justice out of the hands of the officers of the law.

SIMS & GRIDER, GEORGE S. HARDY and S. R. CREWDSON for appellant.

1.   The court erred in overruling defendant's motion for change of venue.

2.   The court erred in overruling defendant's motion for continuance made on the 6th day of July, 1905, the second day after he was shot.

3. The court erred in permitting to be proven the words and acts of Fletcher, Guy and Jim   Lyon, and to introduce in evidence a book and other papers claimed to belong to Guy Lyon found at the scene of the difficulty, defendant not being present when such words of Fletcher, Guy and Jim Lyon were spoken, or acts done, no conspiracy being charged in the indictment.

4. The court erred in permitting over the objection of defendant leading questions to be asked Mary Gladder, and Vincent Gladder, and their answers to be made thereto.

5. Misconduct of the Commonwealth's Attorney, John S. Rhea, in stating to the jury in argument "if there is any man on the jury who believes the defendant guilty, but fails to inflict the death penalty, he should be execrated of all men, and the good women of Logan County should meet him on the street when discharged and lash him with a cat-o'-nine tails.

### AUTHORITITES CITED.

Ky. Statutes, Sections 1109, 1110, 1118; Johnson v. Commonwealth, 82 Ky., 116; Jett v. Commonwealth, 85 S. W., 1181; Bowman v. Commonwealth, 96 Ky., 8.

N. B. HAYS and C. H. MORRIS for appelee.

(No brief in the record.)

OPINION BY CHIEF JUSTICE HOBSON—Reversing.

John H. Sacra being indicted jointly with W. R. Fletcher, Guy Lyon, and Jim Lyon for the crime of rape upon the person of Mary Gladder was found guilty as charged, and his punishment fixed at death. The facts out of which the prosecution grew are stated in the opinion this day delivered in the case of W. R. Fletcher v. Commonwealth, 96 S. W. 855. All the questions raised on the appeal of Sacra are the same as those raised in the Fletcher case, except one. The defendants were indicted on May 23d, which was the day after the crime was charged to have been committed. They were on that day taken to Bowling Green for safe-keeping, and were kept there from that time, except when brought to Russellville to answer the charge against them. On the 31st of May the cases were called for trial. The defendants' motion for a change of venue being overruled, a continuance on their motion was granted. A special term was held, beginning early in July. Sacra was placed on trial. A jury was obtained from Logan county and part of the evidence heard, when the court

adjourned on July 4th for the day. The Common-
wealth had not completed its testimony, but a good
deal of the commonwealth's testimony had been
given. The court made an order that the defendants
be taken back to Bowling Green that night for safe-
keeping. They were to leave on the train which left
Russellville at 9:15 p. m. Before that hour arrived
a mob of men forcibly entered the jail. There were at
that time no lights in the jail except a lantern carried
by the leader of the mob. In hunting around the jail
for the defendants, the leader of the mob fell through
a trapdoor. The lantern was broken, and the light
went out. In the darkness Sacra fled from the jail,
but while in the jail yard he was recognized by a
member of the mob, who fired on him with a double
barreled shotgun, loaded with large shot. One shot
struck him in the face, about an inch and a half
below the eye, the ball passing about an inch and a
half through the flesh, and making its exit near the
nose. One entered near the angle of the jaw, and did
not come out. A third grazed his ear, making a little
abrasion on the tip of his ear. Sacra fled from the
mob, and, as he fled, met a squad of police officers
coming to the rescue of the jail. One of them, think-
ing that Sacra was fleeing from justice, fired on him
with a pistol, which struck him near the hip bone and
made its exit in front. He was then taken in charge
by the officers, and taken to Bowling Green. There
were no proceedings taken in the case the next day,
but on the 6th Sacra was brought back from Bowling
Green and the trial was resumed. He filed an affida-
vit stating that he was physically unable to go on
with the trial, and that by reason of the excitement
produced by the act of the mob, it would be impossible
for him to have a fair trial at that term before the
jury which had been impaneled. Proof was heard by
the court on the question, and at the conclusion of the
evidence offered on the motion the court overruled it.

The defendant was then brought into court on a cot, he not being able to sit or stand, and the trial was resumed.

The ground upon which the circuit court overruled the motion to discharge the jury and continue the case upon the motion of the defendant was that he was not satisfied there was in fact any necessity for so doing, and that, if the jury were discharged when it was not necessary, the discharge of the jury would operate as an acquittal of the defendant. This is not sound. Where a jury is discharged after the trial is begun upon the motion of the defendant, he may be again placed on trial before another jury. The rule that the jury may not be discharged only applies where the defendant objects to the discharge of the jury. Where he asks that it be discharged, a different rule applies.

In 1 Bishop on Criminal Law, the rule is thus stated:

"Sec. 995. It is a doctrine to which there are few exceptions that a party in a cause may waive any right which the law has given him, even a constitutional one.

"Sec. 996. This right of waiver comes from the principle of natural justice that one should not complain of that to which he consented."

"Sec. 998. * * * If, during a trial, the jury is discharged with the prisoner's concurrence, this consent thereto is his implied waiver of any objection to being tried anew, and he may be so tried. So his consent to the discharge may appear as well from implication as from express words."

The same rule is laid down in Cooley on Constitutional Limitations in these words (page 468): "If, however, the court had no jurisdiction of the cause, or if the indictment was so far defective that no valid judgment could be rendered upon it, or if, by any overruling necessity, the jury are discharged without

a verdict, which might happen from the sickness or death of the judge holding the court, or of a juror, or the inability of the jury to agree upon a verdict after reasonable time for deliberation and effort or if the term of the court as fixed by law comes to an end before the trial is finished, or if the jury are discharged with the consent of the defendant, express or implied, or if, after verdict against the accused, it has been set asde on his motion for a new trial, or on a writ of error, or the judgment thereon been arrested —in any of these cases the accused may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection.'' The entire current of modern authority sustains the above statement of the law.

While there is some conflict in the evidence as to the extent to which Sacra's wounds disabled him, there is no dispute that he had a gunshot wound through his thigh, the ball going in on one side of the thigh and coming out on the other, and that he was also wounded in two places in the face. It is also undisputed that he had required the careful attention of physicians while in Bowling Green and the physicians who had charge of him there and had best opportunity to know his condition testified that he was in no condition to go on with the trial. A man on trial for his life should not be compelled to try when there is doubt about his ability to properly conduct his defense, especially where this disability is produced by armed violence pending the trial. Not only so, but there had been considerable excitement at Russellville when the indictment was first found. The prisoners had been sent away for safe-keeping. To guard against a mob they had not been taken on the train in the usual way, but had been driven across the country to Franklin. And while the excitement had died down to some extent before the trial began in July, when the mob broke into the jail and attempted to kill the pris-

Sacra v. Commonwealth.

oner, it is manifest that a very unusual condition of things existed. It is said there is no proof that the jury knew anything about all this, but they were from that county. When the defendant was brought into court on a cot, they could not fail to see that something had happened. They could see the wounds about his face. They could see that he was not able to sit up; and it is incredible that the jury did not revolve in their own minds the cause of all this and understand the situation. It was only about six weeks after the crime was charged to have been committed, and in view of the proof in the record as to the excitement prevailing in the community at that time the defendant had little show for a fair trial where a mob broke into the jail pending the trial, endeavoring to take his life.

It is said that the defendant is manifestly guilty, and that he was not prejudiced by all this. But he is entitled to a fair trial to determine whether he is guilty and what punishment he shall receive. If he may be properly punished under the mere form of a trial because he is guilty, then why go through the form which has no substance in it? The crime of rape is punishable by confinement in the penitentiary for not less than 10 nor more than 20 years, or by death, in the discretion of the jury. It is important to the defendant to have a fair jury left free to form its own conclusions in fixing the punishment, although he may be guilty. When this mob was trying to take the defendant's life, almost in the presence of the court, he had small chance before the jury to have a fair and impartial trial. In view of the condition of the defendant, the action of the mob, and all the surroundings of the trial, we conclude that a new trial should be granted. It may be unfortunate that the administration of justice should be hindered by a mob under such circumstances. The mob is a relic of barbarism. Lynch law is simply the code of the sav-

age. Civilized society rests upon the basis of law. It is the duty of every self-respecting man not only to obey the law, but to see that all others respect it. People who go into mobs are often inconsiderate, but they are oftener persons who have no respect for law. There is no safety for life or property unless the orderly processes of the law may be followed, and no court can safely undertake to administer justice where the law is not respected and a mob is undertaking to take the administration of justice out of the hands of the officers of the law.

Judgment reversed and cause remanded for a new trial.

SETTLE, J., being of the opinion that on the whole record the judgment should not be reversed, dissents.