STATE *ex rel.* LEA *et al. v.* BROWN *et al.*

(*Knoxville,* September Term, 1933.)

Opinion filed Dec. 9, 1933.

672

L. E. Gwinn, John S. Daniel, Collier Goodlett, J. G. Lackley and Colton, Dickinson & Tillman, for plaintiffs in error.

Zeb Nettles, A. A. F. Seawell and Roberts & Roberts, for defendants in error.

Mr. Justice Swiggart delivered the following opinion of the Court.

The relators, held in custody under a warrant of the Governor of Tennessee issued pursuant to a demand of the Governor of North Carolina for their return to that state as fugitives from justice, filed their petition for the writ of *habeas corpus* to test the validity of the Governor's warrant. The trial court dismissed the petition upon demurrer, and the relators have appealed in error.

The statutes of Tennessee authorize and direct the arrest, and delivery to another state, of persons who are "subject by the constitution and laws of the United States to be delivered over upon demand of the governor of such state or territory." Code 1932, sec. 11927.

The Constitution and statutes of the United States direct such rendition of all persons charged in the demanding state with crime, who shall "flee from justice." Every such person is required to be transported, upon proper demand, to the state "from which he has fled." Constitution, art. 4, sec. 2; U. S. Code, title 18, secs. 662, 663 (18 U. S. C. A., secs. 662, 663).

██ Whether the relators are fugitives from justice, subject to rendition upon demand of the State of North Carolina, is a question of fact. If they are not fugitives from justice, within the meaning of the Constitution and laws cited, they are entitled to be discharged in this

proceeding. *South Carolina* v. *Bailey*, 289 U. S., 412, 53 S. Ct. 667, 77 L. Ed., 1292; *Illinois ex rel. McNichols* v. *Pease*, 207 U. S., 100, 28 S. Ct., 58, 52 L. Ed., 121.

█ A fugitive from justice, within the sense of this inquiry, is necessarily one who, being charged with crime in the demanding state, has fled therefrom. The statute enacted by the Congress so construes and defines the constitutional provision.

The facts of the case before us, established by the petition of the relators and the exhibits thereto, are that the relators, in March, 1931, were charged by indictments in North Carolina with conspiring with others to violate certain provisions of the banking laws of North Carolina denouncing embezzlement and misapplication of.the funds of a bank. Neither of the relators was in the State of North Carolina at or near the time such conspiracy is alleged to have been formed nor when any overt act was committed in furtherance thereof but both of them "voluntarily entered their appearance in the Superior Court of Buncombe County (N. C.) and gave bond to answer the charges in said indictments." They were not tried upon the indictments to answer which they voluntarily entered their appearance, but on July 27, 1931, two other indictments were returned against them, after which the original indictments were dismissed. The new indictments were then consolidated for trial, and upon them relators were tried and convicted. The new indictments were similar in form to the first, but differed in scope and character, in that additional conspirators were named; and, in the second of the two new indictments, now known as the seventh count, the relators were for the first time charged with consummating the alleged conspiracy, through the agency of their cocon-

spirators who were in North Carolina, by actual misappropriation and embezzlement of funds. That the charge made by the new indictments was, however, essentially the same as that contained in the first indictment, was recognized by the relators when they pleaded in abatement to the new indictments that the original indictments undertook to charge them "with the same alleged offenses," and they therefore pleaded "former suits pending." It was no doubt because of this plea that the original indictments were dismissed.

Counsel are incorrect in saying that the conspiracy charge in the seventh count of the indictment was "waived." It was expressly relied upon to establish the relators' responsibility to the State of North Carolina for the overt acts done within the state in furtherance of the conspiracy, and the jury were so instructed by the trial judge in submitting the case for their verdict.

After their conviction in the superior court of Buncombe County, the relators were released on bail pending disposition of their appeal to the Supreme Court of North Carolina. *State* v. *Lea,* 203 N. C., 13, 35, 164 S. E., 737. Upon affirmance of the conviction and remand of the case, they failed to appear, and default judgments were entered on their appearance bonds.

■ ■ The addition of new charges to those already made, and the substitution of new indictments for those to which the relators had entered their voluntary appearance, violated no constitutional right of the relators. This necessarily follows from the rule that, even though a person is brought into the jurisdiction of a state by extradition, he may be there tried "for any other offense than that specified in the requisition for his rendition," without violation of any right, privilege, or immunity

secured to him by the Constitution and laws of the United States. *Lascelles* v. *Georgia,* 148 U. S., 537, 13 S. Ct., 687, 689, 37 L. Ed., 549. The situation in which relators were placed presented a question of ethical policy on the part of the North Carolina courts, but not a question of individual right arising under the Constitution and laws of the United States. *State* v. *Mc-Naspy,* 58 Kan., 698, 50 Pac., 895, 897, 38 L. R. A., 756. The relators were therefore legally and without violation of any of their constitutional rights within the custody and jurisdiction of the North Carolina court, under the indictments on which they were convicted.

On the facts stated, the relators insist that they are not fugitives from justice in North Carolina, for the reason that they were not in the state when the crime charged against them was committed.

There is no language in the constitutional provision, nor in the statute enacted by Congress, expressly making presence in the demanding state, at the time the crime was committed, essential to the right of extradition. The language of the Constitution (Const. U. S., art. 4, sec. 2) is that the right shall exist with respect to one "who shall flee from Justice, and be found in another State." The statute (18 U. S. C. A., sec. 662) gives effect to that provision by directing that the demand shall be made by the Governor of the state "from whence the person so charged has fled."

"The constitutional provision that a person charged with crime against the laws of a state, and who flees from its justice, must be delivered up on proper demand, is sufficiently comprehensive to embrace any offense, whatever its nature, which the state, consistently with the Constitution and laws of the United States, may have

made a crime against its laws." *Appleyard* v. *Massachusetts,* 203 U. S., 222, 227, 27 S. Ct., 122, 123, 51 L. Ed., 161, 163, 7 Ann. Cas., 1073. "The provision of both the constitution and the statutes extends to all crimes and offenses punishable by the laws of the state where the act is done." *Lascelles* v. *Georgia, supra.*

The Supreme Court has not undertaken to limit or restrict the scope and application of the constitutional direction by strict construction. On the contrary, it has declared that "a faithful, vigorous enforcement of that stipulation is vital to the harmony and welfare of the states;" and that it should "be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state." *Appleyard* v. *Massachusetts, supra.* The constitutional and statutory provisions "have not been construed narrowly and technically by the courts as if they were penal laws, but liberally, to effect their important purpose." *Biddinger* v. *Commissioner of Police,* 245 U. S., 128, 133, 38 S. Ct., 41, 43, 62 L. Ed., 193, 198.

In *Hyatt* v. *New York,* 188 U. S., 691, 23 S. Ct., 456, 459, 47 L. Ed. 657, interstate extradition was denied on proof that the accused was not in the demanding state when the alleged crime was committed, and it was held that the constructive presence alone of the accused in the demanding state was not enough to authorize his delivery. This ruling was made with respect to one who had never been physically in the custody of the state in which he was charged with crime. The only reason assigned for the ruling was that, having been beyond the limits of the state when the crime was committed, the accused had not "fled" therefrom. The court said:

"How can a person flee from a place that he was not in?"

In this ruling the Supreme Court cited with approval *In re Mohr* (1883), 73 Ala., 503, 49 Am. Rep., 63, wherein the Supreme Court of Alabama qualified and explained its similar ruling, as follows: "Such at least is the rule, unless the criminal afterwards goes into such State and departs from it, thus subjecting himself to the sovereignty of its jurisdiction. The reason is, not that the jurisdiction to try the crime is lacking, but that no one can in any sense be alleged to have 'fled' from a State, into the domain of whose territorial jurisdiction he has never been corporally present since the commission of the crime." This excerpt is quoted in full, without exception, in *State* v. *Hall* (1894), 115 N. C., 811, 20 S. E., 729, 28 L. R. A., 289, 44 Am. St. Rep., 501.

In Moore on Extradition, vol. 2, p. 949, reference is made to the ruling in 1844 of an inferior court in the State of New York that one Adams, although not in the state when his crime of obtaining goods by false pretenses was committed, became a fugitive from the justice of that state, when he thereafter entered the state and made an engagement with a member of the defrauded firm, but left the state without keeping it. Of this ruling the learned author said: "We are free to admit that we do not perceive any great flaw in the reasoning of the court, restricting it, as it was restricted by the facts of the particular case, to offenses to the commission of which corporeal presence is generally recognized as not essential."

The Supreme Court, in *Hyatt* v. *New York, supra,* ruled also that presence for one day in the demanding state, after the date of the crime, for a purpose wholly dis-

connected with its subject-matter, and months prior to the finding of the indictment, did not render the accused person a fugitive from justice. But no such ruling has ever been made with reference to one accused of crime who, although not in the state when the crime was committed, subsequently entered it and was there taken in physical custody to answer the charge, from which custody he was released only on his undertaking to return upon demand. No such case has been presented to the Supreme Court for its decision.

In a number of the opinions of the Supreme Court, both before and after *Hyatt* v. *New York,* the statement is found that presence of the accused in the demanding state at or about the time the crime was committed is essential to the right of extradition. But in each instance in which the expression has been used the case before the court was one in which the accused, claiming absence from the state when the crime was committed, had not been within the jurisdiction of the court in which the charge of crime was pending. The point ruled by the Supreme Court is therefore that a person, of whom the demanding state has not acquired jurisdiction on the pending charge, is not subject to extradition if he was not in the state when the crime was committed. "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." *Cohens* v. *Virginia,* 19 U. S. (6 Wheat.), 264, 399, 5 L. Ed. 257, 290.

In the voluminous briefs filed for the relators in this court, no reason is suggested as a predicate for holding

that the relators are not fugitives in the constitutional sense, other than the erroneous assumption that the issue is so determined by *Hyatt* v. *New York, supra,* and like cases. The only reason assigned by the court for the ruling made in that case, that one cannot be said to have fled from a state when he had not been there, is obviously not applicable to a person who has not only been in the demanding state but in custody of the court having jurisdiction of the crime charged, from which custody he has not been finally discharged. A case not within the reason of a ruling is not within the scope of its application.

As the case appears to us, the relators were corporeally within the legal custody and jurisdiction of the North Carolina court when they were temporarily released on their bond, conditioned that they would return. When they failed to appear and forfeited their bond, they necessarily became fugitives from the justice of that court and state. Such fugitives can be held immune from extradition only by reading into the Constitution and statute of the United States an exception which is neither expressed nor implied.

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment." And seizure of the principal by his sureties "is likened to the rearrest by the sheriff of an escaping prisoner." *Taylor* v. *Taintor,* 16 Wall. (83 U. S.), 366, 371, 21 L. Ed., 287, 290.

To sustain the contention of the relators would be to solemnly rule that a person, legally imprisoned on a charge or conviction of crime, does not "flee" from the justice of the state when he breaks his prison and

escapes into another state, because his crime was committed through the agency of others while he himself was absent from the state. To so rule would not only deny the plain language of the Constitution and statute, but, in the case before us, would enable the relators to unsuccessfully experiment with the courts of North Carolina and flaunt their jurisdiction as futile after an adverse judgment. The Constitution and laws of the United States forbid such result, and we think we are without discretion but to hold the relators subject to the Governor's warrant of arrest and delivery.

In our opinion, the only questions open for consideration in this proceeding are whether the relators are charged with crime in North Carolina and are fugitives from the justice of that state. These were the only questions proper for the Governor to consider in determining whether he should issue his warrant on the demand of the Governor of North Carolina.

This is not a case in which it is sought to enforce a judgment. We have no jurisdiction to enforce the judgment of a sister state, imposing punishment for a violation of its laws. Our jurisdiction is limited to the determination of whether the conditions to extradition prescribed by the Constitution and laws of the United States, the charge of crime and the flight from the demanding state, are satisfied.

If the procedure followed by the State of North Carolina in the trial and conviction of the relators violated any of their constitutional rights, and if there has been no conclusive adverse adjudication of those points, it would nevertheless be our duty, under the Constitution of the United States, to presume that such wrongs will be remedied when and if the relators are restored to

the jurisdiction of North Carolina and steps are there taken to enforce the judgments of its courts. We repeat, this proceeding in Tennessee is not a proceeding to enforce the judgment of the North Carolina courts, but is purely incidental thereto, and the only inquiry open here is whether the Governor of Tennessee rightfully concluded that relators, being charged with crime in North Carolina, have fled to Tennessee from the justice of that state.

If, possessing jurisdiction, we should reach the conclusion that proceedings subsequent to the indictment in North Carolina were void, as in conflict with the due process of law clause of the Constitution of the United States, it would still be our duty to sustain the extradition, since such a ruling would leave the indictments undisposed of, and the relators would stand as charged with crime in that state. Therefore we think all such matters can be adjudicated only in courts vested with jurisdiction thereof, after the relators are returned to the jurisdiction of the only state empowered to enforce the judgment of conviction or to otherwise dispose of the charge of crime.

These views follow necessarily from the nature of the proceeding, an application for the writ of *habeas corpus* to test the validity of the Governor's warrant by the Constitution and statute of the United States, pursuant to which it was issued. Being without jurisdiction to enforce the judgment of North Carolina, the courts of Tennessee are without jurisdiction to inquire into the validity of such judgment as a basis for granting or denying extradition. And, if the relators have been denied due process of law by the courts of North Carolina, with respect to matters not already adjudi-

cated, they should be left free to present such matters to a state or federal court to which the State of North Carolina is subject, whenever that state, having regained custody of them, endeavors to enforce its judgment. The relators will remain under the protection of the Federal Constitution, if returned to North Carolina, and this proceeding for the writ of *habeas corpus* is a summary proceeding, "to be kept within narrow bounds, not less for the protection of the liberty of the citizen than in the public interest." *Biddinger* v. *Commissioner of Police,* 245 U. S., 128, 38 S. Ct., 41, 43, 62 L. Ed., 193.

This limitation of the scope of our jurisdiction in this proceeding is clearly indicated by the rulings of the Supreme Court. *Munsey* v. *Clough,* 196 U. S., 364, 25 S. Ct., 282, 284, 49 L. Ed., 515; *Drew* v. *Thaw,* 235 U. S., 432, 35 S. Ct., 137, 59 L. Ed., 302; *Hogan* v. *O'Neill,* 255 U. S., 52, 41 S. Ct., 222, 65 L. Ed., 497.

"The sufficiency of the indictment, as a matter of technical pleading, will not be inquired into on *habeas corpus.* . . . If it appear that the indictment substantially charges an offense for which the person may be returned to the state for trial, it is enough for this proceeding." *Munsey* v. *Clough,* 196 U. S., 364, 373, 25 S. Ct., 282, 284, 49 L. Ed., 515.

"In extradition proceedings, even when, as here, a humane opportunity is afforded to test them upon *habeas corpus,* the purpose of the writ is not to substitute the judgment of another tribunal upon the facts or the law of the matter to be tried. The Constitution says nothing about *habeas corpus* in this connection, but peremptorily requires that upon proper demand the person charged shall be delivered up to be removed to the state having

jurisdiction of the crime." *Drew* v. *Thaw*, 235 U. S., 432, 439, 35 S. Ct., 137, 138, 59 L. Ed., 302.

The judgment of the trial court should therefore be affirmed.

In this opinion the CHIEF JUSTICE and MR. JUSTICE COOK concur.

MR. JUSTICE CHAMBLISS delivered the following opinion of the Court.

The questions presented on this appeal from a judgment sustaining a demurrer to a *habeas corpus* petition may be grouped under three general heads, first, the right of petitioners to a review of the trial in the courts of North Carolina, resulting in conviction, affirmed by the Supreme Court of that state, *State* v. *Lea*, 203 N. C., 13, 35, 164 S. E., 737, and followed by the denial by the United States Supreme Court of writs of *certiorari*, *Lea* v. *State of North Carolina*, 287 U. S., 668, 53 S. Ct., 291, 77 L. Ed., 576; second, the right of petitioners to a hearing in the courts of Tennessee of the question of fact as to whether or not petitioners are fugitives from justice; and, third, whether or not petitioners may be held to have waived their right to contest extradition.

I. Under the first head, the validity of the proceedings in the North Carolina courts is challenged as in denial of due process on many grounds, including, as briefed by diligent counsel for petitioners, want of legal existence of the trial court, trial under an *ex post facto* law, picking of the jury, false allegations of venue, absence of defendants when indictments were transferred dominance of mob psychology, summary trial procedure, illegal testimony, unfair argument, unfair conduct of trial judge, failure of Supreme Court to apply corrective

processes, failure of trial judge to exercise discretion on motion for new trial, summary dismissal of petitioners' appeal, etc. I deem it unnecessary to consider in detail these matters, for the reason that the members of this court are unanimously of opinion that this court is without jurisdiction to reopen and review these questions, all of which were made, or might have been made, in the North Carolina proceedings challenged, and particularly in view of the denial by the Supreme Court of the United States of petitions for writs of *certiorari*. It was peculiarily within the province of that tribunal to review the action of the courts of North Carolina in passing on the guilt or innocence of the accused in alleged violation of the due process clause of the Federal Constitution (Const. Amend. 14), or otherwise in denial of a fair trial.

II. An independent and wholly unpreadjudicated issue is presented under that head of the petition which resists extradition on the ground that petitioners were not within the demanding State of North Carolina when the crime with which they are charged was committed, and are therefore not fugitives from justice. The right of extradition and the remedy rest on familiar constitutional and statutory provisions. Independently of these, no foreign state could, save by force, remove a citizen from his home state for trial and punishment into another state. The fundamental requirement prescribed by the states as a condition of relinquishment of control over its citizens to a foreign state is that the citizen sought to be removed shall be a fugitive from justice of the demanding state; and, not once, but again and again, the United States Supreme Court has defined a fugitive from justice as one who, ''having within a state com-

mitted that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense, has left its jurisdiction and is found within the territory of another.'' Or, as expressed by MR. JUSTICE PECKAM, in *Munsey* v. *Clough*, 196 U. S., 364, 374, 25 S. Ct., 282, 49 L. Ed., 515, quoted with approval by MR. JUSTICE McREYNOLDS in his opinion, recently published in *South Carolina* v. *Bailey*, 289 U. S., 412, 53 S. Ct., 667, 671, 72 L. Ed., 1292, ''when it is conceded . . . [as it is in the case before us, heard on demurrer to the petition] that the person was not within the demanding state *when the crime is said to have been committed*, and his arrest is sought on the ground only of a constructive presence at that time, in the demanding state, then the court will discharge the defendant. *Hyatt* v. *New York ex rel. Cockran*, 188 U. S., 691, 23 S. Ct., 456, 47 L. Ed., 657.''

The words ''when the crime is said to have been committed'' are italicised, because it seems too evident for question that they express an absolutely determinative essential, or, as has been said, ''a jurisdictional prerequisite to an extradition warrant.''

And the foregoing language used by MR. JUSTICE PECKAM is quoted for the further reason that it has peculiar appropriateness to the case before us, in that it distinctly repudiates ''constructive presence at that time'' as a sufficient ground for removal under the extradition laws; the record in this case showing, as clearly recognized in the opinion of the Supreme Court of North Carolina, that the charge against the petitioners is that they were constructively, not bodily, ''within the demanding state when the crime is said to have been committed.''

As suggested by this reference to the opinion of the

Supreme Court of North Carolina, it does thus appear that that court passed upon the question of guilt of the accused on proof of constructive presence in that state only, and this question was submitted by petition to the United States Supreme Court, which denied a review; but it is to be observed that this holding was in construction of the laws of North Carolina applied to defendants, personally within the jurisdiction of that state by voluntary appearance, and in this situation the United States Supreme Court might well have found no error. However, this adjudication had no possible application to the situation now presented, being an application for extradition of the petitioners, governed wholly by the laws particularly provided for such cases of attempted removal of persons from one state into another.

Reliance is had upon the *appearance and conviction* of petitioners in the foreign state, without reference to the fact, heretofore taken to be essential, of presence in the demanding state *at the time when the crime was committed*. No case is cited, or has been found, where the courts have held or hinted that a charge or showing of conviction of crime in the demanding state may be treated as a substitute for the charge of presence when the crime was committed. As said in *Ex parte Lewis,* 75 Tex. Cr. R., 320, 170 S. W., 1098, 1099, "Congress could have said, where a prosecution had matured into a judgment, that that would be sufficient basis for the extradition; but that body has not so enacted, and until this occurs the states are powerless to provide this as a basis for extradition." And this seems so in reason, having in mind the principle involved when foreign countries and sovereign states yield, by treaty, or, as here, by federal constitutional provisions, the right to protect its

own citizens from that prejudice which naturally accompanies trial of a foreign accused among those to whose ties of blood and nationality he is a stranger. It is natural that, when removal is sought, it should be at least *charged* that the demanded citizen had abandoned the protection of his own state or territory and gone within the foreign demanding state and there committed crime against its laws. He has thereby elected that jurisdiction for his offense, and should be returned to it on demand for trial. History records the jealousy with which the right to extradite and try in a foreign state has been guarded and denied, unless the offense has been there committed. Certain classes of offenses, under a statute of the arbitrary reign of Henry VIII, although committed out of the realm, were authorized to be tried in any county in England. "But," says COOLEY, J., in *Swart* v. *Kimball,* 43 Mich., 449, 5 N. W., 635, 638, "it is well known that the existence of such statutes, with a threat to enforce them, was one of the grievances which led to the separation of the American colonies from the British empire."

No extended citation of the many cases defining "fugitive from justice," as used in the extradition statutes, will be made. A few follow. In *McNichols* v. *Pease,* 207 U. S., 100, 28 S. Ct., 58, 52 L. Ed., 121, MR. JUSTICE HARLAN summarizes the holdings and plainly treats the question whether or not the accused was physically present in the demanding state upon the commission of the crime with which he stands charged as determinative of the issue, in accord with the earlier case of *Roberts* v. *Reilly,* 116 U. S., 80, 6 S. Ct., 291, 300, 29 L. Ed., 544, wherein this rule was laid down. Holding that the question of whether or not the petitioner was a fugitive from justice

was one of fact, the opinion concludes (italics inserted):
"The appellant in his affidavit does not deny that he was
in the State of New York about the date of the day laid
in the indictment; . .. . and the fact that he has not
*been within the state since the finding of the indictment
is irrelevant and immaterial.* To be a fugitive from
justice, in the sense of the act of congress regulating the
subject under consideration, it is not necessary that the
party charged should have left the state in which the
crime is alleged to have been committed, after an indict-
ment found, or for the purpose of avoiding a prosecution
anticipated or begun, *but simply that, having within a
state committed* that which by its laws constitutes a crime,
when he is sought to be subjected to its criminal process
to answer his offense, he has left its jurisdiction, and
is found within the territory of another."

In 25 Corpus Juris, 257 it is said: "To constitute one
a fugitive from justice from a given state it is essential
that the person having been within the demanding state
shall have left it and be within the jurisdiction of the
state from which his return is demanded, and that the
person shall have incurred guilt before he left the former
state and while bodily present therein. If he was only
'Constructively' in a state, committing a crime against
it, although not personally within its borders, he has
not fled from it and is not a fugitive from justice."

And so, in 11 Ruling Case Law, 730, 731, it is said:

"As has been previously noted, the federal constitu-
tion and the laws of Congress passed in pursuance there-
of do not provide for the extradition of any persons ex-
cept those who have fled from or left the demanding state
as fugitives from the justice of that state; and it ap-
pears to have been generally held that a person cannot

be such a fugitive unless he was in the state from which the demand comes when it is charged that the crime was committed. The fact of the accused's presence therein at the time of the commission of the offense charged must be affirmatively shown and should be recited in the extradition warrant. And the accused is entitled, under the Act of Congress, to insist on proof of this fact.''

In Words and Phrases, First Series, volume 4, page 2995, the definition is thus stated:

''What constitutes a fugitive from justice has been the subject of much discussion by eminent text-writers, and of many decisions by the courts and by the Governors of the several states. There seems to be a substantial unanimity in all the authorities on one proposition: that, to be a fugitive from justice, a person must have been corporeally present in the demanding state at the time of the commission of the alleged offense. So that a person who was only constructively present in a state demanding his extradition at the time of the commission of the alleged crime cannot be said to be a fugitive from justice; his actual presence being required'' (citing numerous cases).

In *Taft* v. *Lord,* 92 Conn., 539, 103 Atl., 644, 645, L. R. A., 1918E, 545, 547, the court said:

''To constitute one a fugitive from justice, as administered in a given state, two things are essential, to-wit:. (1) That he, having been in that state, has left it and is within the jurisdiction of another; and (2) that he incurred guilt before he left the former state and while he was bodily present in that state'' (citing authorities).

The Court of Appeals of New York, in *Keller* v. *Butler,* 246 N. Y., 249, 251, 158 N. E., 510, 511, 55 A. L. R., 349, said: ''Unless the plaintiff was in the State of Florida

at the time of the commission of the crime, he could not be extradited under the Constitution and laws of the United States. His actual, not his constructive, presence was necessary in the State of Florida to make him a fugitive. *Hyatt* v. *New York ex rel. Corkran,* 188 U. S., 691, 23 S. Ct., 456, 47 L. Ed., 657; *McNichols* v. *Pease,* 207 U. S., 100, 28 S. Ct., 58, 52 L. Ed., 121. Therefore, it might be that he could be convicted of a crime committed through his instigation, if caught in the State of Florida, although he could not be brought from another state upon any such charge.''

Cases there are where persons have broken custody, or broken parole, and been extradited, but in most of these cases the ground of extradition laid was the charge then pending that the person had committed a crime in the demanding state, in conspiring to break custody, as in *Dew* v. *Thaw,* 235 U. S., 432, 35 S. Ct., 137, 59 L. Ed., 302; or in breaking parole, see *Ex parte Williams,* 10 Okla. Cr., 344, 136 Pac., 597, 51 L. R. A. (N. S.), 668; *Drinkall* v. *Spiegel,* 68 Conn., 441, 36 Atl., 830, 36 L. R. A., 486; *People* v. *Mallon,* 218 App. Div., 461, 218 N. Y. S., 432.

It is significant that the contention made in foregoing cases was that, after conviction, no ''charge'' of crime, as required by the language of the extradition statutes, longer remained, but no suggestion was offered or considered that the *conviction* could be treated as sufficient of itself, in substitution for the *charge* of crime committed in the foreign state. The essentiality of this requirement seems clearly to have been assumed as a condition of extradition. Conviction was held to be merely in confirmation of, not a sufficient substitute for, the charge of crime.

III. But, conceding, as hereinbefore indicated, the general right of a person sought to be removed under an extradition warrant to contest by *habeas corpus* the fact of his bodily presence within the demanding state where the crime with which he is charged was committed, and this despite a previous conviction in the demanding state, have not the petitioners in the case before us bindingly waived their right to resist extradition? Waiver is concisely defined as "the voluntary relinquishment of a known right." 27 R. C. L., 904. Waiver is a doctrine of very broad and general application. It concedes a right, but assumes a voluntary and understanding relinquishment of it. "It is a voluntary act, and implies an election to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." 27 R. C. L., 904.

An affidavit of Col. Luke Lea, one of the petitioners here, made and filed in the trial court in North Carolina on the 29th of July, 1931, in support of his application for a continuance, sets forth facts relied on to show waiver. A pertinent extract therefrom reads as follows:

"On March 16, 1931, an indictment was returned against said affiant and others by this Court, charging a conspiracy to violate the banking laws of said State. Said indictment was numbered 255 and reference is here made to the record of that Court for the contents of same.

"On March 27, 1931, affiant *voluntarily appeared* in the State of North Carolina, to answer the charges contained in said indictments.

"Before making such voluntary appearance, and after he had been informed that said indictments had been returned against him, and had obtained a certified copy thereof, affiant *was advised by counsel he had consulted*

*that he was not subject to extradition* to answer the charge embraced in said indictment, *for the reason that he was not in said State of North Carolina at or about the time of the commission of the acts charged* in said indictments; but affiant, *notwithstanding his legal rights to remain in Tennessee, being convinced of his innocence* and *confident of his ability to establish such innocence upon a fair trial, voluntarily appeared as aforesaid.*'' (Italics inserted.)

A reading of the italicized language in connection with the definition of waiver last above quoted is peculiarly suggestive. Quite clearly we have here ''a voluntary act,'' also an ''election,'' with knowledge supported by legal advice, to ''dispense with,'' or to ''forego,'' an ''advantage'' or right, which petitioner might have ''demanded and insisted on.''

The record further shows that thereafter, presumably accepting and relying on this waiver of the right to resist extradition, should they leave the jurisdiction and return to Tennessee, bonds for their appearance to respond to the final judgment of the North Carolina courts were executed by petitioners and accepted. An element of estoppel thus appears.

A party may waive any provision of a contract, statute, or constitution intended for his benefit. Bouvier & Anderson's Law Dictionaries. These and other text-book authorities follow the language of MR. JUSTICE STRONG in the early case of *Shutte* v. *Thompson,* 15 Wall. 151, 159, 21 L. Ed. 123, ''a party may waive any provision, either of a contract or of a statute, intended for his benefit.'' So, it was said in a leading case, *In re Cooper,* 93 N. Y., 512, ''It is very well settled that a party may waive a statutory and even a constitutional provi-

sion made for his benefit, *and that having once done so he cannot afterward ask for its protection.* [Italics inserted.] (*Lee* v. *Tillotson,* 24 Wend. [N. Y.], 337 [35 Am. Dec. 624]; *Embury* v. *Conner,* 3 N. Y. 511 [53 Am. Dec. 325]; Cooley's Const. Lim. 181.) The appellant is in this position. He participated as an actor in procuring the order which he now seeks. to set aside, and took his chance. . . . To that end there was not only acquiescence on his part, but intelligent and efficient dealing with the matter and consent to the order. By this consent he must be deemed to have made his election and should be held to it.''

So, following indictment in North Carolina, petitioners had the right to stay in Tennessee and, in response to extradition proceedings here, contest removal on the ground that they had not been physically within the demanding state at or about the time of the commission of the crime. This right was clear. But this record shows that petitioners, protesting their innocence and unwilling to rest under the charges, freely and voluntarily went into the State of North Carolina, waiving extradition, and presenting themselves there for trial in the courts and under the laws of that state. They boldly and freely made their choice and relinquished their right to resist extradition. They thus made their election. In acceptance of this voluntary waiver and appearance, the State of North Carolina proceeded to try them at large expense, and after conviction, permitted them, pending appeal, to give bond for their future appearance and depart the confines of that state. Here appear elements frequently present and incident to and which strengthen waiver—election and estoppel. Despite this definite course of conduct, strongly indicative of waiver, with all

694

its elements, may petitioners, when sought to be returned to the jurisdiction of their persons which they had, in apparent full appreciation of the consequences, voluntarily adopted, be heard to invoke the defense which they had thus relinquished after adoption of this appearance and waiver and action thereon by the courts of the State of North Carolina?

Looking further to the application by the courts of this doctrine of waiver, it is to be conceded that there are recognized limitations thereon, particularly in criminal cases. Lack of jurisdiction of subject-matter is a generally recognized exception. "It is a maxim in the law that consent can never confer jurisdiction; by which is meant that the consent of parties cannot empower a Court to act upon subjects which are not submitted to its determination and judgment by the law." Cooley on Const. Lim. p. 575. But such jurisdiction of the "subjects" was not here wanting. Clearly the courts of North Carolina had jurisdiction to try the crime with which petitioners were charged. This cannot be denied. So long as petitioners were beyond the limits of that state, they were immune from trial in its courts, but, when present there, jurisdiction was complete, and the judgment of the courts of that state fully binding. In one way only could jurisdiction of the person have been defeated, namely, by their absence from that state. This originally lacking jurisdictional element was supplied by their voluntary appearance.

The general rule undoubtedly is that the objection that a court has no jurisdiction of the person of the accused may be waived. See many cases cited to support this text in 16 C. J. 184; none being cited to the contrary.

It is the issue of venue which is here involved.

It is well settled that "the right which the constitution gives to a defendant to be tried in the county in which the offense was committed is a personal privilege and may be waived by him." 16 C. J., 187, citing *In re Mote,* 98 Kan., 804, 160 Pac., 223; *State* v. *Kindig,* 55 Kan., 113, 39 Pac., 1028; *Kennison* v. *State,* 83 Neb., 391, 119 N. W., 768; *State* v. *Crinklaw,* 40 Neb., 759, 59 N. W., 370; *State* v. *Browning,* 70 S. C., 466, 50 S. E., 185. This court holds that "the right to object to the locality of trial is a personal privilege which the party may waive and thereby confer jurisdiction." *Brown* v. *Brown,* 155 Tenn., at page 537, 296 S. W., 356, 358, citing cases.

This waiver of venue rights has been recognized in many cases and under various conditions, although fundamental constitutional rights are those cut off. Supporting the text, "persons procuring or consenting to a change [of venue or Court] cannot object to the jurisdiction of the new Court," 16 C. J., at page 222, cites *State* v. *McLendon,* 1 Stew. (Ala.), 195; *People* v. *Zane,* 105 Ill., 662; *Taylor* v. *Commonwealth,* 172 Ky., 136, 188 S. W., 1087. Even constitutional protection against second jeopardy, a carefully guarded right, may be waived. See *State* v. *Gillis,* 73 S. C., 318, 53 S. E., 487, 5 L. R. A. (N. S.), 571, 144 Am. St. Rep., 95, 6 Ann. Cas., 993; *Sacra* v. *Commonwealth,* 123 Ky., 578, 96 S. W., 858, 29 Ky. Law Rep., 1010; *Jones* v. *Commonwealth,* 124 Ky. 26, 97 S. W., 1118, 30 Ky. Law Rep., 288; *Burnett* v. *State,* 76 Ark., 295, 88 S. W., 956, 113 Am. St. Rep., 94.

The foregoing authorities illustrate the application of the waiver doctrine to criminal cases. Limitations of the doctrine in criminal cases have frequently been declared. For example, personal presence of the accused on trial for a felony may not be waived. *Hopt* v. *Utah,*

110 U. S., 578, 4 S. Ct., 202, 28 L. Ed., 262. "If he be absent," says Cooley (Const. Lim., p. 452), "either in prison or by escape, there is a want of jurisdiction over the person, and the Court cannot proceed with the trial," etc. And so it is held that an accused may not waive trial by jury in a felony case, provided for by "Magna Charter," or consent to trial by less than twelve. *State* v. *Stewart,* 89 N. C., 563; *Cancerni* v. *People,* 18 N. Y., 135. And see many cases cited in Cooley's Const. Lim. p., 458, to the same effect, but this is not universally the rule, as noted by the same high authority. "The rights guaranteed to one accused of crime fall naturally into two classes—those in which the State, as well as the accused, is interested; and those which are personal to the accused which are in the nature of personal privileges. Those of the first class cannot generally be waived, those of the second generally may be." 8 R. C. L., 60.

Broadly speaking, the recognized limitations on waiver in criminal cases are directed and confined to the assurance of a fair trial of an accused, in whose life and liberty the public, and not he only, has an interest, in a court having jurisdiction of the subject-matter and of the person. No case has been found denying the right on grounds of public policy, or otherwise, of an accused to submit himself voluntarily to the jurisdiction of a court having jurisdiction of the subject-matter (here the crime with which he is charged), and thereby waive objection to said court.

While the case before us differs on its facts from any heretofore considered, so far as has been found, the principle involved in the application of waiver appears sound, as heretofore indicated, and has been given effect in situations that are analogous. Some of these have

been referred to; others might be cited. For example, more than one hundred years ago (1823) it was said by CHIEF JUSTICE MARSHALL, in response to a motion, presented by Mr. Webster, to dismiss a writ for want of jurisdiction of the person, that "the exemption from arrest in a district in which the defendant was not an inhabitant . . . was the privilege of the defendant, which he might waive by a voluntary appearance;" and that, "where the defendant voluntarily appeared in the court below, without taking the exception, it was an admission of the service, and a waiver of any further inquiry into the matter." *Gracie et al.* v. *Palmer et al.*, 8 Wheat, 699, 700, 5 L. Ed., 719, wherein the defendant was a resident of New York, and the suit was pending in Pennsylvania.

Waiver was applied in *Re Popejoy*, 26 Colo., 32, 55 Pac., 1083, 1085, 77 Am. St. Rep., 222, cited by counsel for North Carolina, where the defendant had been arrested in a county other than that in which the officer had authority to act. To the challenge of the defendant directed to the right of the court to proceed against him, the court responded: "Inasmuch as the petitioner [for *habeas corpus*] . . . appears to have voluntarily submitted to such arrest and removal . . . he has waived the right to raise this question by voluntarily accompanying the sheriff to the county of Arapahoe."

The situation of petitioners in the instant case is somewhat similar to that of one who had voluntarily accompanied an arresting officer from another state, waiving all extradition proceedings, and submitted himself to trial in the courts of a foreign state. This is a common and usual practice.

Again recognition of the application of the doctrine of waiver, pertinent by analogy, appears in cases' dealing with assertion of the constitutional exemption from arrest of members of legislative bodies. See *Prentis* v. *Commonwealth,* 5 Rand. (26 Va.), 697, 16 Am. Dec., 782. And, while the writ of *habeas corpus* was denied by the United States Supreme Court in *Stallings* v. *Splain,* 253 U. S., 339, 343, 40 S. Ct., 537, 539, 64 L. Ed., 940, on the ground that the petitioner having given bond was not under actual restraint, MR. JUSTICE BRANDEIS recognized the applicability to a case of resisted removal to a demanding state in this pointed language:

*"Furthermore by voluntarily giving bail to appear in Wyoming, the purpose of the removal proceedings had been accomplished, and all questions in controversy in the habeas corpus and in the removal proceedings terminated.* Whether his arrest and detention had originally been valid was thereby rendered immaterial. *Re Esselborn* (C. C.), 8 Fed., 904. *And likewise the question whether there was a right then to remove him.* Compare *Cheong Ah Moy* v. *United States,* 113 U. S., 216, 28 L. Ed., 983, 5 S. Ct., 431; *Ex parte Baez,* 177 U. S., 378, 44 L. Ed., 813, 20 S. Ct., 673."

And see, to the same effect, *Unverzagt* v. *U. S.* (C. C. A., 1925), 5 Fed. (2d), 494.

 Such is the case now before us. The right of trial by jury was preserved by this waiver, with all its essential incidents and forms. Whether observed or not in the procedure had, whether or not the "due process" protective rights of the accused were violated, were matters for the courts of North Carolina, subject to review by writ of *certiorari* by the Supreme Court of the United States. The question here relates only to the initial right

to try the accused at all, which right they voluntarily conferred by consent, a matter of jurisdiction of the person, and in doing so waived the right to contest the question originally open to them of bodily presence within the State of North Carolina at the commission of the crime for which they consented to be tried by the courts of that state.

However, petitioners made answer to the application of waiver on the ground that, while they did voluntarily waive extradition and present themselves for trial in North Carolina, they did so to answer charges contained in certain indictments which at that time had been found against them; that, upon and after their appearance and surrender to the North Carolina court, other indictments were found containing distinct and additional charges on which they were forced to trial without opportunity for preparation of defense, over their objection and protest, and were convicted thereon. This is plausibly urged. The refusal of a continuance after the new charges were preferred was complained of and passed on by the Supreme Court of North Carolina and was one of the complaints submitted to the Supreme Court of the United States, and as to that issue this court is foreclosed. However, it is for this court to consider whether or not waiver, which must always be supported by the elements of understanding and intention, may be applied, in view of the alleged changes made in the charges preferred, subsequent to the submission by petitioners of their persons to the North Carolina jurisdiction.

Two answers appear to this contention of petitioners. In the first place, whatever a comparison of the indictments may indicate, the record shows that petitioners

filed and relied on, in response to the indictment on which they were tried, sworn pleas, based on the assertion that the new or amended indictments were substantially the same as the originals which petitioners went to North Carolina to be tried on. This plea, sworn to by both of the petitioners here, in part recites: "The defendants would further show that at the time of the returning of said purported indictment there were pending before this Court other purported indictments being styled '*State of North Carolina versus Wallace B. Davis, Luke Lea, Luke Lea, Jr., and E. P. Charlet,*' and numbered 255 and 225A, and . . . undertaken to be returned by said purported Grand Jury at the March and April, 1931, terms of said Court, undertaking to charge these defendants, and all of them, with the same alleged offenses undertaken to be charged, and, as these defendants are informed and believed, and therefore aver, will be relied upon and sought to be proven by the State in this cause, and these defendants, therefore, plead this fact of former suits pending to said purported Indictment 255, 255A, and . . ." It will be observed that it is expressly alleged that by the new indictments the defendants are "undertaken to be charged" with "the same alleged offenses" charged in the former indictments.

In the next place, while an inspection discloses variations in details, it is not clear that the substance of the charges was not the same. It is not readily conceivable that the difference in form and details of the charges would have induced a different course on the part of petitioners in the matter of their voluntary appearance for trial in North Carolina. It seems highly probable that the same disposition to face their accusers and challenge their charges in the courts of even a foreign state, would

have been shown, if the indictments had originally been framed as they were later. This view is sustained by the showing on the record that petitioners were protesting their innocence and went eagerly to meet their accusers, unwilling to hide behind available defenses to extradition. And, finally, as emphasized by the Supreme Court of North Carolina, while there was conviction under the seventh count, as well as under the first and fifth, it being mainly the seventh count which presented the new and additional charges above mentioned, the sentences under the seventh count were provided to run concurrently with those under the preceding counts, with the result that, if error was committed with respect to this count, no practical injustice has resulted to the accused, petitioners here.

In view of the importance to the public and the accused of the questions presented on this large record, some of which do not appear to have been heretofore directly decided, and in recognition of the unusual diligence of counsel in the presentation of authorities and argument, I have felt it proper to state my views thus fully.

In conclusion, it will be seen that (1) this court is unanimous in holding that it cannot review the validity of the judgments of the courts of North Carolina, or their action in passing on the guilt or innocence of the accused; and that (2) MR. JUSTICE McKINNEY and CHIEF JUSTICE GREEN concur with me in holding that the petitions must be dismissed and the judgment affirmed on the ground that by their voluntary conduct and declarations petitioners have waived any right they originally had to resist extradition; and that (3) MR. JUSTICE COOK and CHIEF JUSTICE GREEN concur with MR. JUSTICE SWIG-

GART in holding that, regardless of waiver, petitioners are subject to extradition under the applicable statutes, because they were personally present before the courts of North Carolina and there tried and convicted and thereafter fled the state.

Although thus entertaining divergent views as to grounds of action, the court agrees unanimously that the judgment of the trial court must be affirmed dismissing the petition for *habeas corpus* and remanding the petitioners to the custody of the North Carolina authorities.

McKINNEY, J., concurs in this opinion.

GREEN, C. J., concurs on the question of waiver.