The People of the State of New York ex rel. George Pahl, Relator, v. H. William Pollack, as Sheriff, and Others, Respondents.

Supreme Court, Erie County, September 16, 1940.

*Samuel M. Fleischman,* for the relator.

*John J. Bennett, Jr., Attorney-General [Alfred Cohen* and *Irene O'Sullivan, Assistant Attorneys-General,* of counsel], and *Leo J. Hagerty, District Attorney [Gordon Steele, Assistant District Attorney,* of counsel], for the respondents.

Hinkley, J. This is an interesting and strange case. Relator, a resident of New York State, was convicted in Pennsylvania of burglary and sentenced to the Eastern Penitentiary for two six-year terms to run consecutively. After serving six years he was released on parole and permitted to return to Buffalo, N. Y. His release on parole was limited by certain rules and conditions. Relator conformed minutely to the conditions of his parole with no criticism, save as charged in the petition of the Supervisor of Paroles in his request for requisition.

Relator was arrested at the instigation of New York State parole officers without warrant apparently for a violation of his Pennsylvania parole. He was released on a writ of habeas corpus. Later application was made by the Pennsylvania pardon and parole

authorities to the Governor of Pennsylvania for a requisition for the extradition of relator from New York State to Pennsylvania. The petition of the Board of Pardons sets forth the alleged violation and does not allege that the parole was revoked. The petition alleges in detail that relator had violated his parole in that he was " responsible for the pregnancy of one Mayme Giornesto, a resident of the City of Buffalo, New York, and that he was an accessory before and after the fact to an abortion committed on the body of Mayme Giornesto on or about March 23rd, 1940, which took place in the domicile of the said George Pahl, premises 110 Appenheimer Street, Buffalo, New York."

The requisition of the Governor of Pennsylvania was honored by the Governor of New York, and relator was rearrested. He was brought before this court and later, in accordance with section 838 of the Code of Criminal Procedure, a writ of habeas corpus was issued. It is upon the return of that writ that this proceeding is before the court.

There comes instantly to mind the very strange and unique circumstances of this case. Had the requisition been based upon an indictment found in Pennsylvania or a warrant issued in that State, there would ordinarily be but a simple inquiry as to whether relator was identified as a fugitive from justice and whether he was in the demanding State at the time of the alleged crime. (*People ex rel. Hubert* v. *Kaiser*, 206 N. Y. 46.)

There is authority for the contention that a parolee is still charged with the original crime, and even though permitted to leave the State of his conviction is a fugitive from justice. (*People ex rel. Hutchings* v. *Mallon*, 218 App. Div. 461; affd., 245 N. Y. 521.) In the cited case, however, the parolee had fraudulently obtained his parole and such parole had been revoked. In the instant case the parolee had earned his parole and such parole has not been revoked. So far as the evidence discloses, his conduct since release on parole has been exemplary. His Pennsylvania parole officers are demanding his return because of a vindictive charge of an irresponsible young woman who has repudiated the charge under oath. This charge, which has no force in law, is the claim that relator and his family committed a crime in the city of Buffalo. The assistant district attorney who so ably argued to dismiss the writ has not even suggested that relator be prosecuted here for the alleged crime. Concededly if even sufficient evidence existed to procure an indictment the district attorney of Erie county would act. It follows conclusively that no legal evidence has been produced of the crime charged.

Prior to the first hearing upon the return of the writ the said Mayme Giornesto had gone to the office of the relator's attorney and in her own handwriting voluntarily wrote and signed the following statement: " The Statement that I told about George Phal is not true I just said those thing because I was mad at him and his family and I wanted to make them some trouble so I thought to my self that that was the only way to put the whole family in to it. Mayme Giornesto."

The writ of habeas corpus is a sacred writ. It may not be suspended " unless when in cases of Rebellion or Invasion the Public safety may require it." It stands between the individual and his government in all its branches. " While the warrant of the Governor is presumptive evidence of the fact, there is no reason on principle why it should be conclusive. It was said by Judge JENKINS in *Matter of Cook* (49 Fed. 833), referring to the case of *Roberts* v. *Reilly* (116 U. S. 80): ' That decision by its very terms implies that the action of the Governor is only presumptively regular, and can be reviewed by the courts. Surely it cannot be claimed that such action is conclusive upon personal right, and may not be inquired of by judicial tribunals. Surely it cannot be that the right to personal liberty hangs upon so slender a thread as the arbitrary will of the authorities of the demanding and surrendering States. " No person shall be deprived of life, liberty or property without due process of law." That is the fundamental law of the land, coming to us from Magna Charta.' * * * If, therefore, on the return to the writ it is clearly shown that the relator is not a fugitive from justice and there is no evidence from which a contrary view can be entertained, which is the fact in this case, as appears by the stipulation and concession of the parties, there is no reason why greater efficacy should be given to the warrant of extradition than to the warrant of any other magistrate by which a citizen is imprisoned or deprived of his liberty." (*People ex rel. Corkran* v. *Hyatt*, 172 N. Y. 176, 189.)

It is axiomatic that inquiry upon every writ of habeas corpus must be complete even though summary. The importance of this case to the relator and the circumstances demanded that the court endeavor to conduct a hearing at which proof could be presented covering all of the circumstances surrounding the requisition. (Civ. Prac. Act, § 1259; *People ex rel. Genna* v. *McLaughlin*, 145 App. Div. 513; *People ex rel. Sodero* v. *Warden*, 227 id. 755.) The court ordered a hearing and directed relator's counsel to subpœna the complainant, Mayme Giornesto. In open court and under oath she positively repudiated her original story told to the parole officers. She swore that she had fabricated the charges because

she was angry and wanted to cause trouble for the relator's family. Upon cross-examination she admitted that she had sworn falsely on direct examination in one particular to a material fact. Her testimony was confusing and her appearance as a witness was such that no court could have determined when she lied and when she told the truth. Not one scintilla of evidence was produced to corroborate her original story to the parole officers.

There is one bold fact which every sane thinking person must admit. The dismissal of this writ will mean for the relator six years of imprisonment without reduction for time spent on parole. (*Anderson* v. *Corall*, 263 U. S. 193.) His imprisonment will be as the result of a false charge set in motion by an angry young woman who admittedly has spoken and testified falsely. The court does not impugn the motives of the Board of Pardons of Pennsylvania. But it does question the Board's ability to deal justly in this case. Relator has brought action for false arrest against members of the New York State Board of Parole. Personal feeling in this case has been most bitter. The members of the New York State Parole Board who have been sued by relator were the *alter ego* of the Board of Trustees of Eastern Penitentiary of Pennsylvania for whom they acted. The latter Board must grant relator a hearing. There relator will be denied the ordinarily constitutional right of counsel. The Board will be bound by no rules of evidence; as laymen its members would have no knowledge of the probative value of testimony, and its decision would not be reviewable. Strangely enough it would not be essential to prove upon that hearing that relator has been *convicted* of a crime. For under a Pennsylvania decision if a parolee *commits* a felony while on parole he *must* serve out the remainder of his sentence. (*Commonwealth of Pennsylvania* v. *Warden*, 24 Pa. Dist. Ct. 339.)

The court could resurrect musty precedents, gather together various dicta, obiter and otherwise, hold the Governor's warrant to be sacrosanct; find that relator is theoretically in prison; that theoretically he is a fugitive from justice; that theoretically he was in the demanding State at the time of the commission of the alleged crime in this State; that theoretically he is still charged with the original crimes; that he is a convicted law breaker who theoretically has been given a theoretical privilege or act of grace of parole. The court might declare that it must presume that relator would be given a fair hearing before the Trustees of Eastern Penitentiary. The court could say that the whole business is a matter for that Board, and in the Chesterfield language of Oklahoma send him back to prison with the greatest of pleasure. (*Matter of Williams*, 10 Okla. Crim Rep. 344.) But that decision would prostitute justice.

For on a writ of habeas corpus the court must inquire beyond the Governor's warrant; the relator is not actually in prison; he is not actually a fugitive from justice; nor could he be in two States at the time of the commission of the alleged crime. Practically he has earned parole on his original sentence, and according to the record has deserved the continuance of his parole, and practically he cannot obtain before the Board of Trustees of Eastern Penitentiary a fair trial such as he would be accorded in a court of law. The time has not yet arrived when a trial justice in the determination of a writ of habeas corpus can be so shackled by theoretical language born of hard cases that he must violate his oath to deal justly. The relator under a formal writ of habeas corpus has had his day in court. Not only has he been exonerated of the charge of having committed the crime set forth in the requisition papers, but the court is convinced beyond all reasonable doubt that he has not violated his parole but is innocent of the charge placed against him.

Writ granted and prisoner discharged.